ROBERT H. WILSON et al. *v.* MARY BEAUCHAMP et al.

1. HUSBAND AND WIFE — PURCHASE OF LAND — ADVANCEMENT. —Where the husband purchases land with his own money, and has the deed made to his wife, if she acquires any right in the land, it is by way of advance- ment, and this will depend upon the intention of the parties at the time of the transaction. The question of advancement under such circumstance,. though presumed in the first instance, is a question of pure intention, and, therefore, any antecedent or contemporaneous acts or facts may be received, either to rebut or support the presumption; and any acts or facts, so immediately after the purchase, as to be fairly considered a part. of the transaction, may be received for the same purpose; and this pre- sumption is stronger in favor of a wife than a child, for the reason that. she cannot, at law, be trustee of her husband.

2. SAME— PROOF OF HANDWRITING. — Experts are allowed to testify whether the signature in dispute is by the same hand as another admitted to be genuine. And while comparison of handwriting by the jury is restricted. in the English practice to writings put into the case for other purposes,. it is allowed in the American states to put in the genuine signatures. written before the controversy arose, for the mere purpose of enabling. the jury to judge by comparison.

3. Same — Same — Conflict of Testimony. — Where there is a conflict in the evidence in case depending on facts, where no legal questions are involved, as in the case under consideration, and where the mind cannot repose with entire confidence and certainty upon a conclusion in favor of either party, the action of the court below will not be disturbed.

Appeal from the Chancery Court of Yalobusha County. Hon. William Kellogg, Judge, presiding.

The facts in this case are sufficiently stated in the opinion of the court.

The following are the assignments of error :

1. The said original and amended bills disclose no case entitling the complainants to relief.

2. The facts as established by the exhibits and evidence are not sufficient to entitle the complainants to recover.

3. The evidence as a whole does not sustain the allegation of the original and amended bills.

4. And for other reasons the appellees say that the said decree ought to be reversed and the bill dismissed.

*Harris & George,* for appellants :

Reviewed the evidence, and insisted that it was amply sufficient to sustain the decree. If the instrument creating or acknowledgment was a forgery, it was a forgery committed by Archibald Wilson. All the witnesses agree that the body of the instrument is in his handwriting. The dispute is only as to the signature of Nancy Wilson. It is impossible to believe that A. Wilson committed the forgery. There was no motive for it, for Mrs. Wilson acknowledges in her deposition that she would have signed it if requested to do so by A. Wilson, and hence a forgery is unnecessary.

Again, there are two witnesses who think that the signature to it is Mrs. Wilson's. She does not deny it positively. She would not recognize it. She admitted that she might have signed such a paper.

The testimony of the experts amount to nothing — and they

differ. The opinions of those who are self-sufficient enough to speak with positiveness about matters of this sort ought not to weigh against the strong probabilities of the case. Besides, the land was held for twenty-five years, just as it would have been if Mrs. Wilson were a trustee. A. Wilson acted as owner, not merely as husband. He assessed the land in his own name, paid the taxes, and sold and conveyed it in his own name.

*E. S. Fisher*, for appellees:

The statute law of the state since the code of 1822, has been uniform, that the wife could only convey her land by the joint deed of herself and husband. At common law her deed alone was absolutely void. If then, the husband and wife must both be *vendors*, how could the husband become vendee in the same deed? It was a trust which could not be executed by the voluntary act of the husband and wife. Suppose the husband and wife by joint deed had conveyed to the husband, the deed would have been void. The wife cannot be the husband's trustee, for the very best of reasons, that she cannot execute the trust.

I insist that there is no case made by the evidence, and the court will hold that the trust must be clearly established.

To ascertain what is incumbent upon the complainants, let us quote from the answer of Nancy Wilson. It proceeds: But this respondent *positively and emphatically denies that her husband*, Archibald Wilson, *furnished the money* to pay for the said land. She says she furnished the money, and received the deed in her own name, with the sanction of her husband.

The answer next sets up that the husband was security for his brother, and that he abandoned the Reed purchase, fearing that he would have the debt to pay.

The first witness is Mary Beauchamp, complainant, and daughter of Archibald and Nancy Wilson, proves that in 1844 she was acquainted with the handwriting of Archibald and Nancy Wilson, that the body of "Exhibit A" is in Archibald Wilson's hand, and that the signature is Nancy Wilson's hand-writing, that

she saw this paper in July, 1870, among her husband's papers and recognized the writing of her father and mother. Heard Nancy Wilson say that Archibald Wilson furnished the money to pay for the land.

Nancy Wilson says she never signed or delivered the deed.

Mrs. Martha Crawford says she heard Mrs. Wilson say it was Archibald Wilson's money, for which he sold his cotton, and that he gave it to her to buy the land, that she said when the paper was found, *she had no more knowledge of it than the dead.*

W. T. Beauchamp, Mary's husband, says "Exhibit A" was found in 1870 among some old papers of John Lott's, who could give no account of it.

This is all of complainant's case, except that she said she might have signed it.

Townsend, a good judge of writing, is clear in condemning the writing.

The proof fails to make up the case. The writing is not proved when we admit the signature. It was found among John Lott's old papers. How did it get there; he is not examined, and what he said to Beauchamp is not evidence, but even if it was, he said he knew nothing of the writing; he did not receive it as an escrow to hold for the parties. It is therefore an unestablished writing. It was more likely forged and dropped in among John Lott's old papers. If it had been a fair transaction, Lott's evidence would not have been omitted. Lott speaks of a verbal understanding of the same purport of the writing. If Lott, in July, 1870, could remember a verbal understanding had in 1844, he would have been equally likely to remember a writing between the parties handed to him at the same time. But nothing Lott said is evidence.

PEYTON, J., delivered the opinion of the court:

Mary Beauchamp and W. T. Beauchamp, her husband, Ellen Heath and Henry Heath, her husband, Mary E. Wilson, Henry E. Wilson, and James A. Wilson, filed their bill in the chancery

court of Yalobusha county against Nancy Wilson, Robert Wilson, Thomas H. Wilson, Annie Davidson, Rebecca Doak and J. S. Doak, her husband, alleging that in the year 1844, Archibald Wilson, since deceased, purchased from one John Reed a certain tract of land situated near the town of Grenada in said county, containing about 480 acres, as decribed and set out in the bill. The bill further states that the said Archibald Wilson paid two thousand dollars for the land, and had the title to the same made to his wife, Nancy Wilson, who has since made voluntary conveyances of said land in different parcels, to several of her children, who are codefendants to this suit, and prays that the said Nancy Wilson be declared a trustee for the said Archibald Wilson, and that the voluntary conveyances made by her as aforesaid be annulled, and that the legal title to said land may be conveyed to the heirs of the said Archibald Wilson.

The complainants filed an amended bill, setting up an agreement in writing by said Nancy Wilson, of date June 20, 1844, admitting that her husband, A. Wilson, had bought the land in controversy, which she promised to hold in good faith for his benefit.

Nancy Wilson denies in her answer to the bill that her said husband furnished the money to buy said land, and avers that the same was purchased with her money, and she also denies having signed the agreement of the 20th June, 1844, to hold said land in good faith for her said husband, as set out in complainants' amended bill. And the answer of Robert Wilson corroborates to some extent the answer of Nancy Wilson.

Upon the final hearing of the case on original and amended bill, answers, exhibits and proofs, the court declared Nancy Wilson to be a trustee of the lands mentioned in the bill of complaint, for the heirs of Archibald Wilson, deceased, and decreed that the voluntary conveyances of the several parcels of said land made by said Nancy Wilson since the death of her husband, be

set aside and annulled, and that said land be conveyed to the heirs of Archibald Wilson, deceased.

From this decree the defendants appeal to this court, and assign for error the action of the court below.

It is insisted, as stated in her answer to the bill, that Nancy Wilson bought the land herself, with her own money. This view of the case is not sustained by the testimony. And if she acquired a right to the land, it must be by way of advancement upon purchase of the same by her husband in her name. This will depend upon the intention of the parties at the time of the transaction; for it seems to be well settled by the authorities, that whether a purchase by the husband in the name of his wife is an advancement or not, is a question of pure intention, though presumed in the first instance to be an advancement and provision for her, therefore, any antecedent or contemporaneous acts or facts may be received, either to rebut or support the presumption, and any acts or facts so immediately after the purchase as to be fairly considered a part of the transaction, may be received for the same purpose. Perry on Trusts, 119, sec. 147. This presumption is stronger in favor of a wife, than a child; for the reason that she cannot, at law, be the trustee of her husband. 2 Story's Equity, 450, sec. 1204. And it is believed that the parol testimony in this case is insufficient to rebut this presumption. There is, therefore, no *implied* trust in the property for the heirs of Archibald Wilson, deceased.

Has the instrument of writing purporting to be an *express* trust, which is in the words and figures following, "June the 20th, 1844. This is to show that my *husban*, A. Wilson, has bought of John Reed, a *track* of land of 4 hundred and eighty acres *lighing* in Yalowbusha county, near Grenada, and has the deed made to me which I promise to hold in good faith for his benefit, (signed) NANCY WILSON," been established by the testimony?

Mary Beauchamp, testifies that she was acquainted with the handwriting of Nancy Wilson, and also with that of Archibald Wil-

son, having frequently seen them write; that the body of the instrument above stated as Exhibit A., to the amended bill of complaint, is in the handwriting of Archibald Wilson, and the signature thereto is in the handwriting of Nancy Wilson. Saw it in July or August, 1870, among the papers of her husband, and knew at once it was the handwriting of my father, and my mother's signature, in her handwriting. Heard her mother say several times pending this suit, that she may have signed the instrument, but she had no recollection of it. Heard her often say that it was Archibald Wilson's money that paid for the land. And it is agreed by the parties, that Henry B. Heath and Miss Tennie Jones would both testify, that since the commencement of this suit, they have heard Nancy Wilson say she might have signed said instrument of writing, but if she did she had no recollection of it.

Richard P. Lake, testifies, that considering the dates, he regards the signatures of Nancy Wilson to the deed to William F. Beauchamp, dated 26th of December, 1856, and also the like signature to deed to Rebecca Doak, dated 23d of March, 1868, both admitted to be genuine, and the like signature to said instrument, to be written by the same hand. And that the signatures of Nancy Wilson to her bond to John Reed, dated the 11th day of June, 1844, when the purchase of the land was made, and to her deed to Alfred Brown, dated 17th day of February, 1845, and of her name to said instrument, were in his opinion, the same handwriting, and written by the same person. And W. F. Beauchamp, testifies, to having heard Nancy Wilson say, that she might have signed said instrument, but if she did she had forgotten it.

Nancy Wilson denies having signed said instrument, but said she would have signed it if her husband had offered it, knowing what it was for. And Martha A. Crawford testified that she heard her grandmother, Nancy Wilson, say that the money paid for the land in controversy, was the money of her grandfather Archibald Wilson, which he had received for his place in Noxubee county, and for his cotton crop.

T. J. N. Bridgers and K. Coffman say, from comparison of handwriting, they do not believe that Nancy Wilson signed said instrument, and Ann E. Davidson is of the same opinion. And James B. Townsend testifies that he has no confidence in the ability of any one to tell whether a number of signatures or names were written by the same hand, where there is no more seen of the handwriting than the mere names, and where there had been no previous acquaintance with the hands before seeing the names.

The testimony of Mary Beauchamp proves the signature of Nancy Wilson to said instrument to be genuine; and that of Luke proves the signature to said instrument to be in the same handwriting with the signatures of Nancy Wilson to the deeds to William F. Beauchamp and Rebecca Doak, which are admitted to be genuine. This testimony, taken in connection with the admissions of Nancy Wilson that she might have signed it and forgotten it, and that she would have signed it if her husband had offered it, *knowing what it was for*, tends strongly to show that she signed the instrument, and, from lapse of time, had forgotten it; and this presumption is strengthened by the admission that she knew what it was for, and therefore would have signed it if her husband had offered it for her signature. From this, it is evident that there was an understanding between her husband and herself as to the instrument, and that she should execute it; and the instrument having been, as appears from the evidence, written by him, who must have known the importance of such a written declaration of trust, as evidence of the character in which she held the legal title to the land in dispute, it is not to be presumed that he would, after writing it, have neglected to offer it to her for her signature, according to their apparent understanding, whilst the whole transaction was fresh in their memory. This would be the course of a prudent man who desired to secure his right and protect his interests.

On the other hand, we have the testimony of T. J. N. Bridgers

and K. Coffman, who say, from comparison of handwriting, they do not believe that Nancy Wilson signed said instrument; and Ann E. Davidson was of the same opinion. James B. Townsend testifies that he has no confidence in the ability of any one to tell whether a number of signatures or names were written by the same hand, when there is no more seen of the handwriting than the mere names, and where there had been no previous acquaintance with the handwriting before seeing the names. But experts are allowed to testify whether the signature in dispute is by the same hand as another admitted to be genuine. And while comparison of handwriting by the jury is restricted in the English practice to writings put in the case for other purposes, it is allowed in the American states to put in genuine signatures, written before the controversy arose, for the mere purpose of enabling the jury to judge by comparison. But in a note to 1 Greenleaf's Evid., 621, sec. 576, it is said: "Those having much experience in the trial of questions depending upon the genuineness of handwriting, will not require to be reminded that there is nothing in the whole range of the law of evidence more unreliable, or where courts and juries are more liable to be imposed upon."

Where there is a conflict in the evidence in a case depending on facts, where no legal questions are involved as in the case under consideration, and where the mind cannot repose with entire confidence and certainty upon a conclusion in favor of either party, the action of the court below will not be disturbed.

The decree is affirmed.