MRS. CORA KEMP v. DAN G. TURMAN.

[61 South. 548]

APPEAL AND ERROR. *Findings   Conslusiveness.   Descent and distribution.*

Where there is a conflict in the evidence in a case depending on facts, where no legal question is involved and where the mind cannot repose with entire confidence and certainty upon a conconclusion in favor of either party, the action of the court below will not be disturbed on appeal to the supreme court.

APPEAL from the chancery court of Chickasaw county. HON. J. Q. ROBINS, Chancellor.

Suit by Dan Turman against Mrs. Cora Kemp. From a judgment for plaintiff, defendant appeals.

Mason P. Turman died at his home in Houston, Miss., in 1905, intestate, leaving as his heirs at law his widow and three children, to wit, appellant, Cora Kemp, appellee, Dan G. Turman, and another son, M. B. Turman. At the time of the death of the intestate, his wife and daughter were living with him, and both were in feeble health. His sons had left home years before, and were living in other states, and rarely came back on visits to their old home. About a year before his death, Mason P. Turman had given each of his two sons the sum of nine hundred dollars.

At the time of their father's death the sons were notified, and came to Houston, where they remained for several days. During their stay the subject of finances was discussed, and according to appellee's testimony   his

mother and sister represented to him and his brother
that their father had left a very small estate, worth prob-
ably $2,500, and consisting principally of lots in the town
of Houston, and that they (his mother and sister) were
in needy circumstances, and urged the two sons to make
some provision to relieve their necessity and keep them
from want, inasmuch as each of the sons had received
the sum of nine hundred dollars from their father during
his lifetime. The two sons each claimed to be hard up, but
finally it was agreed that the appellee should purchase
all of his brother's interest in the estate of their father
for six hundred dollars, and that appellant should give
his mother and sister his note for one thousand eight
hundred dollars, secured by a deed of trust on his inter-
est in certain property left by his father. Appellee says
that his mother and sister told him that they could then
raise enough money on his note to protect them against
want. Appellee says that in order to obtain enough
money to pay his brother for his interest in their father's
estate, he and his mother and sister executed a deed to a
small lot in Houston left by the deceased.

About a year later Mrs. Turman died, and appellee
again went to Houston, and found his sister bedridden
and in very feeble health. He says that she represented
to him that she could never get well, and that their mother
had left her part of their father's estate to her for life,
and that at her death it would go to appellee, and that in
addition she (appellant) had made her will in appellee's
favor. Appellee claims that because of such representa-
tions, which he believed to be true, but which were in fact
untrue, he deeded to appellant his interest in his mother's
estate. Appellee alleges that he then returned to his
home in Louisiana, and afterwards, upon hearing of his
sister's recovery of health and marriage, and that she
had made large investments, that he made an investiga-
tion, which resulted in disclosing the fact that his sister
was not in poverty, and that neither she nor her mother

were in want at the time of the death of his father, but, on the contrary, his father had left a large estate, consisting principally of money.

Appellee then filed his bill in chancery for an accounting, and charging that the deed of trust and deed executed by him to his mother and sister had been obtained by fraud, and praying that they be canceled. Appellant answered, denying generally the allegations of the bill, and made her answer a cross-bill, the prayer of which was that appellee pay into the estate the money given to him and his brother (nine hundred dollars each) by their father in his lifetime, charging that said sum were given by way of advancement from the estate, and should be repaid by appellee (as he had bought his brother's interest in said estate) before appellee should be allowed to participate in the distribution.

*Leftwich & Tubb,* for appellant.

The chancellor in his decree cancelling the deed and deed of trust, recites that they were voluntary; at least that the deed was such. We think the facts show to the contrary that neither the deed of trust nor the deed was voluntary; that it is supported by not only a money consideration of the sum raised to pay Crawford and the one hundred and fifty dollars given to Dan G. Turman by his mother and sister which entered into it, but the absolute consideration of the one thousand eight hundred dollars advanced by the father to his two sons, which it. was their duty to make good before they had anything else. Further, the daughter was dependent and ill and . alone, and Dan Turman was her brother, all of which afforded a good consideration. We submit that after a deed is executed, no matter if it is voluntary, the grantor cannot for that reason come in and cancel it. They should stand as made; they are solemn instruments executed with the advice of friends and counsel, made under full investigations, and there is no sufficient evidence in this

record to overcome them. We submit that the decree of the court below cancelling the deed of trust and the deed should be reversed; that since Dan G. Turman bought out his brother for a small consideration because these advancements must be made good, that he ought not to account for the whole one thousand eight hundred dollars to his sister, and since that he takes the remainder under his mother's will after the death of his sister, he should have protection by a proper decree to that extent. Of course, if we are right in this contention, the decrees for accounting outside of the improvements must also be reversed and modified because they are all based on the erroneous decree cancelling the deed of trust and the deed, and the later one dismissing the cross-bill, of appellant.

We submit further that the chancellor's decree was erroneous in giving to the sister only one-half of the deposit made in bank of about one thousand dollars in the name of both the sister and mother. This was a jointure, and the deposit being made so that either one of them could draw upon it, as Mr. Harley testifies, the survivor should have the whole of it by inheritance. The uncontradicted statement of Mr. A. M. Harley, the cashier, was "that the deposit to the account of Mary E. Turman and Cora Williams Turman was made by both in person, and that when made they instructed me jointly and separately as cashier of the bank to receive this deposit subject to the check of either one of them or both of them." If one should die, the other had a right to check it out. This was an executed gift, a jointure, a survivorship, and appellant as survivor was due the whole of it. The gift was complete and either calling for the whole received it, whether the other was living or dead. It was like a note payable in the alternative, either could collect. 1 Daniel Neg. sec. 103.

We respectfully ask a reversal of this entire case, on both the law and the facts.

*Joe H. Ford*, for appellee.

It is the principle of law that the supreme court "must accept the finding by the chancellor on a question of fact unless the same is clearly and manifestly wrong." *Melchior* v. *Kahn*, 38 South. 347; *Derdyn* v. *Donovan*, 81 Miss. 96, 33 South. 652; *Stevens* v. *Magee*, 81 Miss. 644, 33 South. 73; *Moyse* v. *Howie*, —— Miss. ——, 53 So. 402. The great number of authorities collected in section 1009, vol. 1, Mississippi Digest, Annotated, just recently published by the Bobbs-Merrill Co. And the other principle that the finding of facts by the chancellor, where the same is based on evidence, will not be disturbed by this court. *Oil Co.* v. *Smith*, 33 South. 443; *Carter* v. *Catchings*, 48 So. 515; *Howell* v. *Shannon*, 80 Miss. 598, 31 So. 965.

COOK, J., delivered the opinion of the court.

This case was decided by the chancellor upon full proof, resolving everything involved in the controversy against appellant.

One of the questions involved—in truth, the main question—was whether money given by the father of both parties to appellee is to be treated as an advancement, and appellant contends that it must be so regarded, unless the evidence clearly shows that such was not the intention of the parties at the time the money was paid. In other words it is insisted that when a father gives money to a son it will be presumed that it was given by way of an advancement unless the contrary appears from a clear preponderance of the evidence. The universal rule seems to be that, when money is given by a father to a son for the purpose of enabling the son to purchase real estate, it will be presumed that the money so given was intended as an advancement. Many cases decided by this court are cited in support of the doctrine, but our attention has not been called to any case, nor has our research discovered any case decided by this court, which holds that the mere gift of money by a father to a son will be presumed to have been intended as an advancement.

*Gee* v. *Gee,* 32 Miss. 190; *Harvey* v. *Ledbetter,* 48 Miss. 95, and *Wilson* v. *Beauchamp,* 50 Miss. 24, are cited in the brief of appellant's solicitor as deciding that "money, or property, given the child during the intestate's lifetime, is presumed to be advancement." In *Gee* v. *Gee, supra,* it is held that when land is purchased by a father in the name of his son, it will be presumed that an advancement was intended. In *Harvey* v. *Ledbetter, supra,* the point under review was not involved; besides the title to real estate, and not mere money, was the subject of that decision. In *Wilson* v. *Beauchamp, supra,* it is held that where the husband purchases land with his own money, and has the deed made to his wife, if she acquires any right in the land, it is by way of advancement, and this will depend upon the intention of the parties at the time of the transaction.

It is of interest to note the rule announced by the court in the last-mentioned case in regard to the power of the appellate court to reverse the trial court where there is a conflict in the evidence as follows: "Where there is a conflict in the evidence in a case depending on facts, where no legal questions are involved, as in the case under consideration and where the mind cannot repose with entire confidence and certainly upon a conclusion in favor of either party, the action of the court below will not be disturbed.

It may be observed here that in the present case there was a sharp conflict in the evidence concerning the intention of the parties at the time the money was given by the father to the son; and if it be the law that such a transaction will be presumed to have been by way of advancement, the chancellor must have reached the conclusion that the presumption was overcome by the evidence, and we are not able to say, with the entire confidence, that he was wrong in his conclusion. There is some conflict in the authorities as to whether gifts of money made to a son during the life of an intestate father should

be presumptively by way of advancement, and while it is undoubtedly true that numerically the weight is in the affirmative, it is not clear that the minority decisions are not based upon the sounder reasoning. However, the evidence in the present case fully warranted the finding that this feature of the controversy was of no practical importance.

Stated conservatively, there was abundant evidence to support the conclusion that appellant received much more from her father during his lifetime than the amount received by appellee.

*Affirmed.*