## LEFLORE COUNTY v. JAMES K. ALLEN ET AL.

1. DEEDS.  _Duress.  Threats of prosecution._

   When the wife of a defaulting county treasurer is threatened by a district attorney with the prosecution of her husband unless she conveys all of her property to the county, and refuses, but subsequently while her husband is still living and liable to prosecution, conveys a part of her property on a renewal of the application, her deed is void as the result of duress.

2. SAME.  _Settlement of indebtedness.  Act authorizing same.  Laws_ 1886, p. 772.  _Effect of settlement._

   An act of the legislature authorizing a board of supervisors to take land in settlement of the debt of a defaulting county treasurer, and providing that upon such settlement he should be relieved from all liability for the indebtedness, does not include his relief from criminal liability, nor prevent the deed whereby his wife conveyed her land to effectuate the settlement from being void for duress, resulting from threats of his prosecution.

3. SAME.  _Ratification.  Estoppel._

   The fact that a wife lived two years after making a deed, void because made under threats of the prosecution of her husband, and expressed satisfaction at the acceptance of the deed and the prevention of disgrace, is not a sufficient ratification to validate the deed, the husband being still alive and subject to prosecution.

4. SAME.  _Quit-claim.  Subsequent acquisition.  Inheritance.  Code_ 1880, §§ 1195, 1235.

   Under code 1880, § 1235, providing that a conveyance without warranty shall operate as a statutory quit-claim and release, and § 1195, that a quit-claim and release shall estop the grantor and his heirs from asserting a subsequently acquired title to the lands conveyed, a deed without warranty, in which a husband unites with his wife in conveying lands owned by her, will estop the husband and his heirs from asserting title to any interest therein which he may subsequently inherit from her—the word, "acquired," as used in the statute, relating to acquisition by descent as well as other methods.

5. SAME. *Ejectment. Injunction of same. Relief on cross-bill. Chancery practice.*

When a county enjoins an ejectment suit for land conveyed under duress, and the defendants, who are the heirs of the grantor, by cross-bill setting up the duress pray the cancellation of the deed and an accounting for rents, they are entitled to have their claim adjudicated, and the chancellor has jurisdiction to vacate the deed and direct a reconveyance of the property, and otherwise dispose of all of the rights of the parties.

6. SAME. *Rent. Limitations. Code 1892, § 2737. Adult and minor heirs.*

The six-year statute of limitations applies to claims of adult heirs for rent of land procured from their mother by duress, and is not suspended as to them by the minority of other heirs, the claims not being necessarily joint.

7. SAME. *Interest. Injunction. Attorney's fees. Liability of county.*

On the partial dissolution of an injunction by a county to restrain an ejectment suit for land procured by it through duress, attorney's fees and interest on rents may be decreed against the county, which is not in such case exempt from liability by reason of its sovereignty, although the charges are in the nature of penalties.

FROM the chancery court of Leflore county.

HON. D. R. BARNETT, Special Chancellor. ..

Leflore county, appellant, was complainant in the court be-low, Allen and others, appellees, were defendants there.

J. K. Allen was treasurer of Leflore county, and was short in his account over $4,000. He was threatened· with indict-ment, and while matters were in this condition the legislature passed an act for his relief in March 1886 (laws 1886, p. 772), authorizing the board of supervisors of said county "to take from said Allen lands in such quantities as they may de-termine, in settlement of said ·indebtedness," etc. In pur-suance of this scheme the district attorney and the board of supervisors undertook to get a settlement. of the matter, and undertook to get Allen and his wife to convey all· the lands they both owned at the time to the county. Accordingly, a deed was prepared, embracing all their lands, which Mr. Allen signed, and it was carried to Mrs. Allen by the district attorney

and a member of the board of supervisors, for her signature. She refused to sign this deed. The district attorney then threatened to prosecute her husband and send him to the penitentiary if she persisted in not signing the deed; but she still refused to sign it. Afterward a deed was prepared and presented to Mrs. Allen for her signature, embracing certain wild lands, but leaving out some lands owned by her in the town of Greenwood. This deed she signed, and it does not appear that the threats were repeated at the time she signed the deed last presented to her. Mrs. Allen died in 1888, and Mr. Allen died in 1898. A few days before the death of Mr. Allen the children of Mrs. Allen brought an action of ejectment against the county to recover all the lands conveyed by both Mr. and Mrs. Allen. Because of a defective description in the deed of some of the land, the county filed a suit in the chancery court against the plaintiffs in the ejectment to enjoin that suit and to reform the deed. The defendants in that suit answered and made their answer a cross bill, setting up that the deed was obtained under duress, and asked for a cancellation of it, and for an accounting of rents, etc. There was a final decree in that case, perpetually enjoining the prosecution of the ejectment suit, and directing the heirs of Mrs. Allen to make a deed of the lands to the county. From that decree they appealed to the supreme court, where the decree of the court was reversed as to the lands belonging to Mrs. Allen and sustained as to the lands belonging to Mr. Allen, and the injunction against the prosecution of the ejectment suit as to the land of Mrs. Allen dissolved, and the cause remanded. See *Allen* v. *Leflore County,* 78 Miss., 671 (29 So., 161). The case in that shape was again heard in the chancery court on the pleadings and proof taken originally and some additional proof, but before any additional proof was taken a motion was made by the complainant to transfer the further trial of the cause to the circuit court. This motion was overruled. The additional evidence was conflicting as to whether or not the

threats of prosecution of Mr. Allen were renewed when the second deed was presented to Mrs. Allen—the one she signed— and also as to her willingness to execute the deed conveying her wild lands, some of the witnesses testifying that she had never objected to transferring the wild lands. From a final decree declaring the deed to be null and void in so far as it purported to convey to the county the lands that belonged to Mrs. Allen, and canceling same, and directing the board of supervisors to make conveyance to her heirs, except the one-sixth interest of her husband, J. K. Allen, and allowing rents that had been actually received on same, with 6 per centum interest, except such as were barred by the six-years' statute of limitations from the date of Mrs. Allen's death to the time of filing the ejectment suit, and allowing an attorney's fee of $150 on the partial dissolution of the injunction, and allowing credit to the county for all improvements actually paid for before the filing of the ejectment suit, complainant appealed, and defendants prosecuted a cross appeal, on the grounds that the chancellor erred in decreeing that the one-sixth interest of Mr. J. K. Allen in the lands belonging to Mrs. Allen, and the rents thereon, became the property of the county in virtue of the deed he made and in applying the six-years' statute of limitations, instead of the ten-years' statute, thus depriving Mrs. Brown and Mrs. Hughes of their interest in the rents for the first three years after Mrs. Allen's death, they being the only heirs who had been of age for six years.

*Monroe McClurg,* for appellant and cross appellee.

Every witness who testified upon the point undoubtedly sustained the proposition that Mrs. Allen's violent objection was to the first deed presented for her signature. That deed embraced the property in Greewood, as well as the wild land outside of the city. The first deed, which she refused to make, is what gave her such grave concern, and against executing which she protested. That was the deed Major Allen carried before

the board of supervisors and informed them and the district attorney that his wife refused to sign, when the district attorney said, "then I'll put you in the penitentiary." That she was satisfied with the conveyance of the country property, which was so badly infested with "frogs and mosquitoes," and which was a "worry and expense," is most clearly shown by many of the witnesses.

The special act of the legislature, approved March 16, 1886, p. 772, was a legislative pardon of civil and criminal liability of Major Allen on account of his defalcation. The legislature must have had in mind his liability to criminal prosecution to the same extent as it did his civil liability. In fact, the act was but a response to the general desire to let the old man satisfy the embezzlement with land and go free. It was a complete pardon upon the sole condition that the settlement therein cited be consummated. It was consummated and "all liability" atoned and dead. The subsequent destruction of the settlement because of a fraud, not practiced by, but upon the Allens, could not possibly revive the criminal liability to embezzlement. The pardon being irrevocably complete, all ground for apprehension of indictment or punishment was lost and there could not be thereafter legal duress based upon the fear of infliction of punishment. The possession of the land adversely to the wife began with the delivery of the deed which evidenced the consummated pardon, and the limitation began then to run and was not stopped for nearly twelve continuous years, when the ejectment suit was instituted. This possession was especially open and in defiance of the Allens. If we are not mistaken in this view, the decision must be with us. This court overlooked this contention in the last opinion, because, no doubt, it was not distinctly pointed out in presenting the whole of a voluminous record involving many issues.

As surely as there may be duress, so surely may duress be condoned or ratified. Without arguing this proposition, the attention of the court is called to the fact that there is no offer

of restitution of the purchase price of the lands out of the rents or otherwise.

The acquiescence of Mrs. Allen for a little more than two years and of her husband and children for twelve years living in close proximity to the land with a lively knowledge of every act and fact respecting the county's open, adverse, avowed claim, are entirely different acts, facts and circumstances from which ratification may be justly and lawfully inferred. To these positive factors may be added the declaration of Mrs. Allen as to her satisfaction with the settlement of the whole matter, as shown in the testimony in this cause, and especially by that of Mayre and Kimbrough. *Simonton* v. *Bacon,* 49 Miss., 582; 1 Story Contracts, 523; *Ellis* v. *Alford,* 64 Miss., 8.

The deed made by Mr. and Mrs. Allen to the county is not in any sense "a quit claim deed." The "estate or interest the grantor has in the land conveyed" as used in § 1195 of the code of 1892 means some present, vested interest in or claim to the lands. It does not mean an expectancy, or contingency, dependent upon the death of the present owner. It does not mean even such a conveyance as a child might make to the lands of an aged and infirm parent, because he had not the "estate or interest" contemplated by the statute.

Section 1170 of the code of 1880 abolished the law of curtesy and dower. In lieu thereof § 1171, and subsequent statutes on the subject, the survivor was "entitled to," "shall have" and the property "shall descend to," and not that he shall inherit. So it is, the husband takes an equal distributive share with the children by force of a cold statute, and not by inheritance, not by purchase, not by acquisition, not by descent proper, not by gift, nor by devsie, but by becoming owner of the property, irrespective of blood and of all consideration, save that of having been husband and survivor of the wife, an absolutely arbitrary rule.

The unquestioned desire, purpose and intent of J. K. Allen was to pass the absolute title of his land and of the lands of

his wife to the county. This undeniable object of Allen will control in a court of equity despite legal rules. That he was anxious for the county to own all is past questioning. The estate or interest intended or attempted to be conveyed by J. K. Allen in the lands of M. V. Allen was not the kind contemplated by § 1195 of the code of 1880. The deed was evidently worded under a belief that his signature, or his joining therein, was necessary to pass the full legal title of the wife, and no purpose to pass any present interest of himself in said land; but having so joined her in said conveyance, the legal effect, especially under the peculiar circumstances of the transaction, was an equitable estoppel of himself, and his heirs, from asserting an adverse claim; and to hold that the interest coming to him, not by legal inheritance, but by sheer force of a statute directing a distribution of a decedent's estate, should inure to the county accords with good conscience.

If the deed was void it was void from its date, and when his wife died the inheritance of the children and his becoming owner under an arbitrary statute of distribution was not affected, but the title to a five-sixths interest passed to them, and his one-sixth interest inured to the county because of his conveyance and his purpose and intent that it should do so. Otherwise, he and his children under him, would be allowed to take a title adverse to the one he had conveyed and in contravention of all equitable doctrines on the subject. The equitable estoppel having been complete as to him in his lifetime could not pass through him to his children, nor pass, because of him, directly to the children.

Perhaps the proper construction is that he pretended to have an interest, or assumed to have an interest in her equitable interest, as vendor or the like. But, however that may be, and irrespective of the fine spun theory as to the legal effect of the imagined quit-claim, he and those claiming under him are absolutely shut off by an equitable estoppel clearly arising upon the face of the deed, and emphatically so from the detailed na-

ture of the transaction. *Garrett* v. *Christopher,* 15 Am. St. Rep., 850; *Wilson* v. *Carrico,* 49 Am. St. Rep., 213; *Wilhelm* v. *Wilker,* 52 Am. St. Rep., 743.

The attorney's fee of $150 must be stricken out. The sovereign is not to be mulcted in damages like an individual for the wrongful suing out of an injunction. Such relief is dependent upon statutory authority; and there is none in such case. On the contrary, no bond is required, but expressly obviated. The vice in assessing this fee and in charging the interest and in claiming the ten-years' limitation agaist collection of rents in lieu of six years, or three years, lies not alone in the absence of statutory authority, but in failing to discern a difference between the *mala fides* of an individual and of a county. We have insisted from the inception of this cause that the sovereign could not be guilty of that moral turpitude and fraud in law for which individuals are not only corrected, but punished. The sovereign may be the recipient beneficiary of the wrongs of its agents, officers, but the utmost that can be required is a redelivery, without damages in the nature of interest, fees or other penalty. All persons dealing with the sovereign through its officers are charged with knowledge that such dealing is based upon radically different principles than are transactions with individuals, and they have no legal cause to expect infliction of penalties to either punish a wrong-doing by the sovereign or to compensate them for extra unnecessary loss of time or money in defending themselves. To state the case answers it.

The statute of three years' and six years' limitations against the collection of the rents of 1887 began to run against Mrs. Allen before her death in November, 1888, and, for the year 1888, it also began to run, because it is a custom known of all men that agricultural rents in this state are due November 1. And it makes no difference that the rents for 1888 were not collected until after Mrs. Allen's death; they were due and fol-

lowed the freehold. In fact, there was no administrator appointed until after ten years, after this litigation began. Again, the rule in *Anding* v. *Davis,* 38 Miss., 574, bars all rents, and should have been followed. Every child and J. K. Allen, Sr., had a joint interest in every inch of the land and in every cent of the rents. The bar of one barred all.

*Mayes & Harris,* for appellee and cross appellant.

When this court pronounced its former judgment and the cause was remanded to the court below, it was met by the chancellor with a little additional testimony. Judge Kimbrough gave an additional deposition, and on the application of the county Mrs. Hughes was examined *viva voce* before the court. Judge Kimbrough's deposition has in it nothing material. Mrs. Hughes, instead of departing from her testimony, repeated it without any change in it at all. So far as the fundamental merits of the case are concerned, therefore, it comes back precisely as before. The material questions here are mere questions of detail.

The chancellor properly overruled the motion of the county to remand the cause to the circuit court, and properly retained jurisdiction to give full relief.

The principle that the dismissal of an original bill will sometimes carry with it the cross-bill has no application to this case because there never was such dismissal. On the contrary, the prayer of the original bill so far as the part of the lands involved in this controversy were concerned, was granted, and the injunction made perpetual; but even if the complainant below, the county, had undertaken to dismiss its original bill, it could not thereby have deprived the court of its jurisdiction, or deprived the Allen heirs of their rights to full relief at the hands of the chancery court. The cross-bill itself set up an independent equity, being the equity for a cancellation and reconveyance on the ground of duress. 2 Pomeroy's Eq., sec.

950; *Dewees* v. *Dewees,* 55 Miss., 315; *Sigman* v. *Lundy,* 66 Miss., 522; *Railway Co.* v. *Brooks,* 66 Miss., 583.

We deny that Mrs. Brown and Mrs. Hughes, or either of them, are barred. We maintain that their right to recover is controlled by the ten-years' statute and not by the statute of six years. If the ten-years statute is applicable, then neither of these heirs is barred, because neither of them had been of age ten years before the bringing of the action of ejectment. Our argument in support of this ten-years' statute is applicable, is contained in our brief on the cross-appeal; and we refer the court to that portion of the brief in order to save mere repetition. One of the causes assigned for the cross-appeal is the holding of the court, that these two ladies were barred as to those years. Of course it is manifest that if neither of them is barred, then the younger children are not barred under the rule in *Anding* v. *Davis,* 38 Miss., 574.

We deny that the rule in *Anding* v. *Davis* is applicable. We deny that the cause of action was joint. We maintain that inasmuch as these parties sued in ejectment as the heirs of their mother, their right of action was several as well as joint, and several not only in regard to the right to recover the lands, but also in regard to the right to recover the rents. In support of this proposition we invoke the case of *Root* v. *McFerrin,* 37 Miss., 17, which is not overruled by *Anding* v. *Davis;* *Calkins* v. *Munsell,* 22 Root (Conn. 333); *Eiceman* v. *Finch,* 79 Ind., 511.

We submit that his honor erred in holding that the claims of Mrs. Brown and Mrs. Hughes for rents was barred as to all such rents as had accrued more than six years before the institution of the action of ejectment. The proper statute of limitation to apply as to them would have been the ten-years' statute, being § 2696 of the code of 1880 and § 2763 of the code of 1892.

That the statute of limitations did not run against Mrs. Allen in her lifetime had been adjudicated in this cause. She

died November 16, 1888. The statute only then began to run against her children and only as to the rents collected by the county subsequent to the year 1888.

As to all of the children except Mrs. Hughes and Mrs. Brown, it was immaterial whether the six years' or ten years' statute applied, because none of the others became of age until a date so late as that they were not barred even under the six-years' statute, but it does make a difference so far as the rents of 1889 and 1890 were concerned in the case of those two.

Leflore county obtained this conveyance by a tortious duress. As to those lands it occupied the attitude of a trustee of the legal title *ex maleficio;* and it occupied the same attitude as to the rents which it collected from year to year. That the ten-years' statute controls in such case, see *Cooper* v. *Cooper,* 61 Miss., 676. This was a case of "the instance of a trust not cognizable by the courts of common law." The mere right to recover the land in ejectment was not a full remedy. The recovery of rents was a mere incident of the deeper and graver question of title. The mere existence of a power to sue at law for the rents, in such case, does not prevent the ten-years' statute from being the true one. *Cooper* v. *Cooper, supra; Woodruff* v. *State,* 77 Miss., 68; *Johns* v. *Williams,* 66 Miss., 350.

The effect of the deed of 1886 was not such as the chancellor attributed to it, and J. K. Allen was competent to inherit from his wife.

Under this head we make two distinct points.

1. That the estoppel wrought by a quit-claim deed under our statute does not extend to a question of inheritance, as distinguished from a question of purchase.

When the deed of 1886 in controversy was made, § 1195 of the code of 1880 was in force, and that section runs as follows:

"A conveyance of quit claim and release shall be sufficient

to pass all the estate or interest the grantor has in the land conveyed, and shall estop the grantor and his heirs from asserting a subsequently acquired adverse title to the lands conveyed."

It is fundamental at the common law that there was a great difference between acquisition of title to lands by purchase and that by descent. 1 Blackstone's Comm., Book 2, p. 201.

The fundamental difference is that when a man purchases, whatever may be the form assumed by his purchase, he takes by his own consent, and without that consent he cannot be a purchaser; whereas, on the other hand, when he takes by descent, his consent is entirely immaterial, the investure being the act of the law. Purchase is voluntary and never compulsory; descent is involuntary and always compulsory. What one received by descent he can afterward get rid of it by his act, but he cannot refuse the title. Therefore, when our statute declares that a quit claim shall estop the grantor and his heirs from asserting a subsequently "acquired" adverse title, the very language of the statute manifestly has reference to a voluntary act on the part of the grantor. In no proper sense of the term can he be said, with any reference to the law of estoppel to "acquire" an adverse title which the law itself casts upon him.

The question is, of course, controlled by our statute, which has for itself undertaken to declare and fix the operation, in this particular, of a quit-claim deed.

Another point on this line, involving somewhat the same idea: Mr. Allen took his one-sixth interest on the death of his wife, by descent. So taking, he took, not by his own volition or consent, as we have shown above, but by representation of his dead wife to the extent of his interest. It would be anomalous and curious if it could be worked out that the representative of a party deceased is, as to the interest represented by him, estopped to claim that interest, when the deceased party whom he represents would not be estopped. The deed does not estop

Mrs. Allen; how can it estop her representative? Does not the vice of the original tort in the obtaining of this deed from Mrs. Allen by duress, so taint the instrument and inhere in it, as to those lands, as that it may not avail either directly or by its own operation or indirectly by way of estoppel, to deprive one whose right is traceable through representation by law as heir?

2.   Another and distinct proposition is this: That even under our statute the estoppel of a quit-claim deed is one co-extensive with the estate, right or interest which the convey-ance purports to pass; and in determining the operation of a deed within the range of this principle, the court will look to all conditions under which the deed was executed.  *Bramlett* v. *Roberts,* 68 Miss., 325.

. Now examine the deed in question.  It runs as follows:

"For and in consideration of the sum of $4,000, the amount due from the said J. K. Allen, former treasurer of said county of Leflore, said J. K. Allen and M. V. Allen convey, and the said J. K. Allen warrants to the President of the Board of Supervisors of Leflore county and his successors in office, the land described as follows: (description); and that the said M. V. Allen and J. K. Allen also convey and said M. V. Allen war-rants to the said President of the said Board of Supervisors and his successors, the land described as follows: (description)."

Looking to the terms of this deed, and to the circumstances under which it was executed, it is perfectly manifest that it was written as drawn, merely in order to save the trouble and expense of an additional deed; that the grantee never looked to Mr. Allen as a source of title, so far as Mrs. Allen's lands were concerned; that the grantee should look to the grantor, as his effective course of title is, we submit, essential in every case in which the doctrine of estoppel is invoked, because of the execu-tion of a quit-claim deed.  To hold otherwise is to hold that the grantee may have something for nothing, and to allow the county to retain a one-sixth interest in this land, obtaining same

by the methods originally adopted and now sought to be made effectual by the operation of the doctrine of estoppel, would be manifestly to allow the county to avail itself of its own wrongdoing and derive a benefit out of a deed fraudulent in law and oppressive in fact.

. Again: Holding firmly in view the proposition settled in the *Bramlett case, supra,* that the estoppel of a quit-claim deed is co-extensive only with the estate, right or interest which the conveyance purports to pass, it seems to be conclusive on this point that a deed of J. K. Allen, considered as a conveyance of the lands of Mrs. Allen cannot be taken and clearly was not intended to be by the parties a conveyance of any right which he might inherit from her, but only a conveyance of any right or interest which he might have in the lands at the time of the conveyance executed. A living person has no heir. It cannot be said that at the time of the conveyance J. K. Allen had even an expectancy in these lands. As heir he had no right, title or interest in them. Mrs. Allen could have defeated entirely any investure of title in him simply by execution of a will.

All, therefore, which under the statute J. K. Allen is estopped to assert is a subsequently acquired title to such interest or estate as he had in the lands at the time the deed was executed.

Argued orally by *Monroe McClurg,* Attorney-General, for appellant, and *Edward Mayes,* for appellees.

CALHOON, J., delivered the opinion of the court:

We decline to disturb the conclusion reached in this cause, on its former appearance in this court in *Allen* v. *Leflore County,* 78 Miss., 671 (29 South., 161), as to the duress of Mrs. Allen, and this regardless of whether the question of duress is or is not *res adjudicata.* Although, even under the threat of putting her husband in the penitentiary, putting stripes upon him, and disgracing her and her children, she refused to sign

the first deed, which carried everything she had, and would have reduced her and her large family to destitution, still she, none the less, acted under duress in signing the second deed, conveying her land in the country which is involved in this controversy. In the first dreadful alternative she might accept disgrace as a lesser evil than to impoverish her large family of little children, and yet yield to the threats in the second instance, which left her the pittance of her town property. This duress was not removed during her life because she died before her husband, and, if she repudiated while she lived, his prosecution impended, in that it could have been commenced at any time, embezzlement not being barred by the statute of limitations. She never made any proposition to the county. It was the county which was annoying her.

Very clearly, the act of 1886 (laws 1886, p. 772) "for the relief of J. K. Allen, ex-treasurer of Leflore county," did not operate as a statutory pardon of the crime. It simply authorized the board of supervisors "to take from said Allen, land in such quantities as they may determine," and, when this was done, it provided that "said Allen shall be relieved from all liability on account of said indebtedness." All this refers to the debt, and not to any crime. We cannot deduce from this statute that the legislature designed to go into the business of selling pardons or compounding felonies. Even if it did, in such phraseology, it could hardly affect the question of duress upon the unhappy wife of the embezzler. She was not learned in the law. The facts that she lived for two years without repudiating her conveyance, her husband being still alive, and that she expressed satisfaction at the acceptance of the conveyance to save disgrace, do not constitute ratification, under all the facts of this case. No doubt she was gratified in preventing disgrace under the threats and yet being able to retain her little town property. When Mrs. Allen died her husband, J. K. Allen, with her five children, each became the owner of a one-sixth interest in her lands. As soon as it thus inured to

him, as the chancellor correctly held, he and his heirs were estopped, because of his deed to the county, from claiming this one-sixth interest from the county. There was no sort of necessity for him to join his wife in her deed for conformity. Under the law, then, either might convey his or her land, not being homestead, without the joinder of the other. But he did join, and used the word "convey."

A conveyance without warranty was a statutory quit claim and release (code 1880, § 1235), and a quit claim and release "shall estop the grantor and his heirs from asserting a subsequently acquired adverse title to the lands conveyed." Code 1880, § 1195. The word "acquired" is used in the sense of obtained. Allen obtained the land by devolution upon him by descent. We cannot yield to the extreme technical meaning urged upon us by counsel, that land can be acquired only by the act of the party. Mr. Blackstone, in his Commentaries (book 2, pp. 200, 201), speaks of where an "heir acquires by descent," and gives two methods of "acquiring," one of which is by "descent"; and, again, he uses this language: "Descent is the title whereby a man on the death of his ancestor acquires his estate by right of representation, as his heir at law." The legislature used the word in this general sense. The interpretation contended for by counsel would occasionally lead to most grotesque results. So, we think, as to this one-sixth and the rents of it, the right is with the county.

The chancellor properly retained jurisdiction for final disposition of the rights of the parties. The original bill of the county was never dismissed, and the Allens set up in their cross-bill an independent equity for cancellation of the deed to the county, and were, in this case, entitled to have adjudicated their claim for relief.

We uphold the chancellor in applying the six-years' statute of limitations to the claim for rents as he did, and in, accordingly, limiting the claim of Mrs. Hughes and Mrs. Brown. In so holding, we do not care to advert to the manifest dis-

tinction between *Root* v. *McFerrin,* 37 Miss., 17 (75 Am. Dec., 49), and *Anding* v. *Davis,* 38 Miss., 574 (77 Am. St. Dec., 658). While all the Allen heirs might, as they did, join in an action of ejectment, still it was not necessarily a joint claim. Either might have sued separately for his share of the lands and rents for that. We are in full view of *Cooper* v. *Cooper,* 61 Miss., 676, which we approve, and cognate cases on express, continuing statutory trusts, in holding that the six-years' statute applies in this case.

We approve the allowance of attorney's fee on partial dissolution of the injunction obtained by the county, and also of the allowance of interest. When a county enters the arena of litigation about lands acquired as these lands were, she disrobes herself of sovereignty *pro re nata,* and is on the footing of any other litigant. The land of Mrs. Allen may be liable for the taxes, state and county, but not in this litigation. The way to recover is by proper proceedings of assessment for the years the lands escaped.

*Affirmed on appeal and cross-appeal, each party to be taxed with one-half the costs.*