FITZGERALD et al. v. ALLEN et al.

[89 South. 146, No. 21697.]

ESTOPPEL. *Warranty deed held to estop wife and her heirs from asserting interest subsequently acquired by inheritance.*

Since an outstanding paramount title acquired by a warrantor cannot be used to defeat the title of the warrantee, but will inure to the benefit of the warrantee, a warranty deed purporting to convey the fee in lands not a homestead, and in which the wife joins the husband, will estop the wife and her heirs from asserting against the warrantees any interest in such lands which she may have subsequently acquired by inheritance.

APPEAL from chancery court of Coahoma county.
HON. F. E. WILLIAMS, Chancellor.

Bill by F. H. Fitzgerald and others against Henry Thomas Allen and others. From a decree of dismissal, complainants appeal. Affirmed.

*Maynard, Fitzgerald & Venable,* for appellants.

Mrs. Lula Faye Cammack, by joining in a deed with her husband, which purported to convey a fee simple title to lands in which he had only a life estate, and which she acknowledged as a wife only, was not estopped to set up her title subsequently acquired through the true owner of the fee, Leonard Cammack, the remainderman. *McDonald et al. v. Rothgeb et al,* 112 Va. 749, 72 S. E. 692; Ann. Cases 1916B, page 63; *Childs v. McChesney,* 89 Am. Dec. 549; *Jackson v. Vanderhaden,* 8 Am. Dec. 378; *Sanford v. Kane,* 133 Ill. 199; *Menard v. Cabble,* Ann. Cases, 1916A, 802; *Ogre v. Street,* Ann. Cases, 1916E, 518; *Griffin v. Sheffield,* 38 Miss. 359; *Strawn v. Strawn,* 50 Ill. 33; *Danbrant v. Va. C. & I. Co.,* 23 L. Ed. (U. S.) 927; 18 Corpus. Juris. 155.

In *Bull v. Beiseker,* 16 N. D. 290, 113 N. W. 870, 14 L. R. A. (N. S.) 514, it was held, that where a covenanter has neither title nor possession, the covenants do not run

with the land, so as to transfer the cause of action for the breach thereof, to remote grantees by operation of assumed conveyances of the property by the execution and delivery of deeds purporting to convey the same. The court declares that the foregoing principle is supported by the overwhelming weight of authority, and cites a number of cases to sustain it. Among the citations will be found the leading case of *Mygatt* v. *Coe*, 152 N. Y. 457, 46 N. E. 949, 57 Am. St. Rep. 521, which is strongly in point. *Nixdorf* v. *Blaunt*, 111 Va. 127, 68 S. E. 258.

We most earnestly submit that the above opinion cor rectly pronounces the law to govern the case at bar. We have carefully studied it from every angle and are at a loss to distinguish it.

A married woman, who unites with her husband in a warranty deed of his land, merely to enable him to pass the title free from her inchoate right of dower is not estopped from asserting in her own favor an after-acquired title to such land. , *Safford* v. *Kane*, 133 Ill. 199, 23 A. L. R. 602, affirming *Sanford* v. *Kane*, 24 Ill. App. 504; *Raymond* v. *Holden*, 2 Cush. 264; 10 Ruling Case Law, par. 58, note 3.

In *Menard* v. *Campbell*, *supra*, among other things, the court said: "In *Arthur* v. *Coverly*, 98 Mich. 82, 56 N. W. 1102, it was held that a married woman uniting with her husband in a warranty deed of her property is liable on the covenant when she obtains all the consideration, which in that case was a conveyance to her of other property. The record in the instant case does not disclose for what purpose the wife signed the deed, as she had no dower interest; the husband's interest being simply a life estate. The burden was upon the complainant to show for what purpose she joined in the instrument and to prove it clearly and to show that she had brought herself within the rule, above set forth. *Mutual Benefit Life Ins. Co.* v. *Wayne Co. Sav. Bank*, 68 Mich. 116, 35 N. W. 853.

This the complainant has failed to do, and it necessarily follows that the wife's signature to the instrument was a

nullity, and did not bind her subsequently acquired title. *Childs* v. *McChensey,* 20 Iowa 431, 89 Am. Dec. 545; *Schoffner* v. *Grutzmacher,* 6 Iowa 137; *Erickson* v. *Johnson* (Ia.), 152 N. W. 575.

We are not unmindful of the fact that some of the cases referred to are based in whole or in part upon certain enabling statutes, as has been said before, and are not to be understood as citing them to be exactly in point, but only to the extent of the principle involved.

Mississippi Cases. The following are cases decided by the supreme court of this state which bear upon the question of after acquired title: *Torrey* v. *Minor,* S. & M., Ch. 489; *Bush* v. *Cooper,* 26 Miss. 599; *Clark* v. *Slaughter,* 34 Miss. 65; *Wrightman* v. *Doe,* 24 Miss. 675; *Andrews* v. *Andrews,* 16 S. W. 346; *Kyser* v. *Earhart,* 64 Miss. 492; *Griffin* v. *Sheffield,* 38 Miss. 359.

The *raison d'etre* of estoppel in regard to after-acquired title is to prevent circuity of action. This being so, would Mr. Allen have had a right of action against Mrs. Cammack? Could he have gone into equity against her—would it lie in his mouth to say he was imposed upon directly or indirectly by her? He knew his rights fully, being advised thereon by eminent counsel. He knew the limited interest the husband had in the land, or is charged under the law with notice; he was cognizant of what interest, she, the wife, had in the property. It would ill become him to assume an air of injured innocence under the circumstances of this case. Had the rights of a third party intervened, a different aspect might appear. But here Allen still has the property and no one but himself can be damaged by what has occured.

The Code, section 2300, Hemingway's (section 2799, Code of 1906) prescribes the form for a married woman's acknowledgment. It is there set out that when a married woman unites with her husband in the execution of an instrument and acknowledges the same in one of the forms above sanctioned, she should be described in the acknowledgment as his wife; in all other respects, and when she

executes any instrument affecting her separate property, real or persc - ¹, her acknowledgment shall be taken and certified as if she were sole; etc.

Mrs. Cammack had no interest in the land in question, other than the veto right of a homestead, and this Mr. Allen knew full well. Everybody connected with the transaction knew that she was only connected with the matter to that extent; and she signed and acknowledged the deed according to the requirements of the statute. In the body of the deed it is recited: Lula Faye Cammack, his wife, and in the acknowledgment, that the within named John S. Cammack and Lula Faye Cammack, husband and wife. From this it is plain to see that no one was deceived.

Section 2287 of Hemingway's Code (section 2774, Code of 1906) reads as follows: "All alienations or warranties of land purporting to convey or pass a greater estate than the grantor may lawfully convey or pass, shall operate as alienation or warranties of so much of the right and estate in such lands as the grantor could lawfully convey, but shall not pass or bar the right to the residue of the estate purported to be conveyed; nor shall the alienation of any particular estate upon which a remainder may depend, whether such alienation be by will or other writing or union of such particular estate with the inheritance by purchase or by descent, so operate by merger or otherwise as to defeat, impair or in any way affect such remainder.

The son of Mr. and Mrs. Cammack, Leonard, was the remainderman, who was to succeed to the property upon the death of his father. Lula Faye Cammack, the wife and mother, had no estate in the property which she could convey or pass. It was not within her power to do anything with the property in any manner whatsoever. This was known by all as a matter of law.

Conclusion.

We submit that first, Mrs. Lula Faye Cammack had a homestead interest in the property which is a mere veto power; second, that she could not have been sued for breach of any convenant by the grantee, Mr. Allen; third, that she

acknowledged the instrument as wife merely, and did not participate in the transaction further than to sign the instrument; fourth, that Mrs. Lula Faye Cammack did not know of the proposition of Campbell to give a deed to her and her husband, and that she did not accept or agree to same; fifth, that Mrs. Cammack had no right coupled with an interest to any estate of the remainderman; sixth, that the equities are equal and Allen knew he was borrowing trouble when he bought this land with its defective title.

It is a pure proposition of law, there is no question of intention involved except the intention of Mrs. Cammack to sign as a life tenant, and no presumptions are to be indulged in, in view of the fact that all parties to the transaction were fully advised that she neither owned nor asserted any interest in the land under the will. Would Mrs. Lula Faye Cammack have been estopped to assert the after acquired title? If so, upon what ground—fraud, misrepresentation, expediency, or public policy? The first two are untenable, and the second two are not sufficient for laying down a rule of property. We contend that the authorities justify one in saying that she is not so estopped.

In view of the foregoing, the decree of the chancellor was manifestly erroneous and should be reversed and the relief asked for in the original bill of complaint should be granted.

*J. W. Cutrer, Sam C. Cook, Jr.,* and *J. C. Cutrer,* for defendant.

We stated at the outset, that the facts in this case were simple, but an accurate statement of them has required sometime. So far as the legal phase of the case is concerned, we think that they can be restated with great brevity as follows; On June 10, 1907, John S. Cammack and Lula Faye Cammack, executed a deed of trust containing general covenants of warranty of title, to E. R. Maxey, Trustee, for the benefit of W. S. Campbell.

W. S. Campbell afterwards acquired the title to the property conveyed by foreclosure proceedings, and subsequently conveyed that title to the said John S. Cammack and Lula Faye Cammack.

Thereafter, on December 19, 1908, John S. Cammack and Lula Faye Cammack, sold the property for value to appellees and then executed their warranty deed conveying the property to the appellees. Thereafter, the said John S. Cammack, died and according to appellant's claims, his life estate fell in, and the remainder of the property became vested in his son, Leonard Cammack. Leonard Cammack died childless, leaving Lula Faye Cammack as his only heir at law.

The question thus clearly presents itself, did the title acquired by Lula Faye Cammack through inheritance from her son, pass by virtue of her express warranty?

We are almost tempted to say, as this court said in the case of Saw Mill Company v. Douglass, 107 Miss. 678: "When the warrantor acquires an outstanding paramount title, it cannot be used to defeat the title of the warrantee, but will inure to the benefit of the warrantee. This is a familiar principle of law and needs no citation of authorities."

Our court has laid down this principle in a great number of cases, and we are unable to see how it can now be questioned. The cases which we find where the court has dealt with this very simple proposition of law, we list as follows: Fletcher v. Wilson, Sm. & Marshall Chancery, 376; Lowrey v. Minor, Sm. & Marshall Chancery 489; Wightman v. Reynolds, 24 Miss. 675; Bush v. Cooper, 26 Miss. 599; Clarken v. Slaughter, 34 Miss. 65; Kyser v. Erhart, 64 Miss. 492; McInnis v. Pickett, 65 Miss. 354; Anderson v. Anderson, 16 So. 346; Bramlett v. Roberts, 68 Miss. 325; Edwards v. Hiller, 70 Miss. 803; Allen v. Leflore County, 80 Miss. 298; Anderson v. Wilder, 83 Miss. 606; Harris v. Byers, 73 So. 614; Miss. Saw Mill Co. v. Douglass, 107 Miss. 678; Code of 1906, sections 2817 and 2767.

These cases all hold that under the Mississippi statutes even a quitclaim deed purporting to convey the whole title will and does convey an after-acquired title: The brief of counsel for appellants is largely an interesting discourse upon the attitude of other states with reference to after acquired titles.

It is sought by appellants here to escape the force of the unbroken line of authorities to which we have just referred, upon the theory that Mrs. Cammack was a married woman on the dates of the execution of the deeds by her, and for that reason she is not bound by her covenants of warranty. Such an argument is in direct conflict with our statute abolishing the disabilities of coverture.

Section 2517 of the Code of 1906, and 2051 of Hemingway's Code, provides as follows: "DISABILITIES OF COVERTURE ABOLISHED—Married women are fully emancipated from all disability on account of coverture; and the common law as to the disabilities of married women and its effect on the rights of property of the wife, is totally abrogated, and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition or disposition of property of any sort, or as to her capacity to make contracts and do all acts in reference to property which she could lawfully do if she were not married; but every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of all property, real and personal, in possession or expectancy, and to make any contract in reference to it, and to bind herself personally and to sue and to be sued, with all the rights and liabilities incident thereto, as if she were not married."

Reference is made as we have said in the brief of counsel for appellants, to a number of cases decided by the courts of this country upon the question of a married woman being bound by her covenants of warranty. Although we do not feel that these cases can have any persuasive effect in this case, because of the force of our statute abolishing the disabilities of coverture, we shall refer to a few of them,

in order to make it clear to the court that all these cases
have been decided upon the statutes of the states where
they have arisen.

In a note to the case of *Watkins* v. *Watson,* 22 L. R. A.
779, we find the following at the bottom of page 781 : "She
is estopped by her covenants from procuring all, or taking
a superior title in her husband's land, or her own where
the statute authorizes her to contract as a *femme sole."*
*Sandwich Mfg. Co.* v. *Zellmer,* 48 Minn. 408; *Graham* v.
*Meek,* 1 Orr. 325; *Yerkes* v. *Hadley,* 22 L. R. A. 363; *Guer-
tin* v. *Mombleau,* 144 Ill. 32; *Knight* v. *Thayer,* 125 Mass.
25; *Little* v. *Holland,* 6 N. E. 647. See, also, Note in 57
A. S. R. 171; 8 Ruling Case Law, 1058-9.

The rule is laid down in 13 Ruling Case Law, page 1326,
as follows: "If a married woman is given full power to
contract as if she were a *femme sole,* there seems to be no
reason why her covenants of warranty in her duly executed
deed conveying her own land should not operate to pass
her after-acquired title and it has been so held. Citing
among others, the authorities above mentioned.

After a somewhat exhaustive examination of the authori-
ties cited by counsel for appellants, as well as the other
authorities we have cited, we are conducted to the conclu-
sion that the states of the Union group themselves natural-
ly, under several different classes, upon the question as to
whether or not a warranty deed by a married woman will
pass her after-acquired estate. These classes are as fol-
lows:

1. Those states whose courts have held that a married
woman is estopped by her warranty deed to claim any after-
acquired title. States in this group have statutes similar
to ours abolishing the disabilities of coverture, and we ask
the court to examine the cases which we now cite, so that
it may be seen that this is correct. (A) Dakota: *Yerkes* v.
*Hadley,* 5 Dak. 324, 2 L. R .A. 363; (B) Georgia: *Amos* v.
*Cosby,* 74 Ga. 793; (C) Illinois: *Guertin* v. *Mombleau,* 144
Ill. 32, 33 N. E. 49; *Lake Erie, etc.,* v. *Whitthaus,* 40 N. E.

1014; (D) Indiana: *Little* v. *Hoagland,* 6 N. E. 647; (E) Massachusetts: *Knight* v. *Thayer,* 125 Mass. 25.

With reference to this case, it is to be noted that the rule prior to the passage of the statute was that a married woman was not under any circumstances, bound by her covenants of warranty. (F) Minnesota: *Sandwich Mfg. Co.* v. *Zeller,* 51 N. W. 379; (G) Oregon: *Keady* v. *Martin,* 1916A. Ann. Cas. 796, 69 Ore. 299, 137 Pac. 856.

2. Another group of states is composed of those where statutes have specifically provided that a husband or wife joining in a conveyance of the property of the other, shall not be bound by the covenants in the conveyance, unless it is expressly so stated on the face thereof.

We find the following states which we think, fall under this heading: (A) Alabama: *Gouzales* v. *Hakil,* 49 Ala. 260, 20 A. R. 282; *Prior* v. *Loeb,* 119 Ala. 450, 24 So. 714; (B) Iowa: *Childs* v. *McChensey,* 20 Iowa, 431, 89 A. D. 546; *O'Neal* v. *Vanderburg,* 25 Iowa, 104; *Erickson* v. *Johnson,* 152 N. W. 575; *Thompson* v. *Merrill,* 10 N. W. 796.

3. The other group of states would be those where married woman are still under disabilities of coverture, and therefore unable to contract; and, also, those where married woman have been by statute emancipated in so far as their separate property is concerned, but have not been authorized to contract generally. Among these states are: (A) Arkansas: *Jefferson* v. *Edrington,* 53 Ark. 545, 14 S. W. 99; (B) Michigan: *Menard* v. *Campbell,* 186 Mich. 583; 1916A, Ann. Cas. 802; (C) New York: *Jackson* v. *Vanderhaden,* 17 John. 167; 8 A. D. 378; *Witham* v. *Schack,* 11 N. E. 649; (D) Vermont: *Goodenough* v. *Fellow,* 53 Vt. 102.

Under this classification of cases would fall the case of *Griffin* v. *Sheffeld,* 38 Miss. 389, decided at a period in the history of the state when our statute abolishing the disabilities of coverture had not been passed, and married women were not allowed to make contracts.

It would, therefore, appear to be clear, that where the disabilities of coverture had been removed, a married woman is as free to contract as a married man, and that the courts have so held, and that where it appears that the courts of any of the states have announced a limitation upon the right of a married woman to contract and to be bound by the general covenants of warranty in a deed executed by her, such decisions rest for their reason upon the peculiar statutes of the particular state which may so have rendered any such decision.

The decisions of courts contrary to our contention are only of those states where the legislature has failed to enact statutes removing the disabilities of coverture, or rest upon the particular and peculiar language of the statute of the state where the disabilities have been removed partially and to a limited extent only. There is no such question to be considered in Mississippi, where the legislature has emancipated the married woman without restriction of any sort, and where she has been expressly granted the power to contract as though a *femme sole*.

We earnestly contend, therefore, that on this record and under the great, and indeed unbroken weight of authority in our favor, the judgment of the lower court should be affirmed.

W. H. COOK, J., delivered the opinion of the court.

F. H. Fitzgerald, L. C. Franklin, attorney, and Maynard & Fitzgerald, a law firm composed of George F. Maynard and Gerald Fitzgerald, exhibited their bill of complaint in the chancery court of the Second district of Coahoma county against Henry Thomas Allen and his wife, Jane Stuart Allen, defendants, and from a decree dismissing the bill, the complainants prosecuted this appeal.

The bill of complaint charged that many years ago B. L. A. Cammack died testate in Coahoma county, Miss., seized and possessed of about one hundred and sixty-five acres of land; that, under the terms of the will of the said

B. L. A. Cammack, this land was devised to John S. Cammack for his use and benefit for and during his life, with remainder to the surviving child or children of the said John S. Cammack if he should die leaving issue, but, if he should die without issue, then the property was to be equally divided between the living children of the testator's brother, R. S. Cammack; that immediately after the death of B. L. A. Cammack the said John S. Cammack, together with his wife, Lula Faye Cammack entered into possession of this land and occupied it until December 18, 1908, when the said John S. Cammack and wife conveyed the land by deed to appellees, that Lula Faye Cammack joined her husband in the conveyance to appellees in conformity with the statute which requires a wife to join with her husband in the conveyance of the homestead, but that she joined under protest and under compulsion of her husband; that Lula Faye Cammack had no interest in the property other than the veto right of the wife in a conveyance of the homestead; that John S. Cammack had only a life estate in said land, the remainder being vested in his children; that on January 9, 1919, John S. Cammack died, leaving surviving him his wife, Lula Faye Cammack, and an only child, Leonard Cammack; that six days later Leonard Cammack died intestate leaving surviving him as his sole heir at law his mother, the said Lula Faye Cammack; that on January 26, 1919, Lula Faye Cammack died intestate leaving as her sole heir at law her father, F. H. Fitzgerald, and her mother Mrs. F. H. Fitzgerald; that shortly thereafter Mrs. F. H. Fitzgerald died intestate leaving as her sole heir at law her said husband, the complainant, F. H. Fitzgerald; that by reason of the claim of appellees to the land under and by virtue of the deed dated December 18, 1908, executed by the said John S. Cammack and Lula Faye Cammack, and which purported to convey the fee in said tract of land, the said F. H. Fitzgerald and wife were forced to employ attorneys to bring such proceedings as would be necessary to put them in possession of the land and remove the cloud from the title thereof; that on Jan-

uary 29, 1919, for such purposes, they employed the com-
plainants Maynard & Fitzgerald and L. C. Franklin, at-
torneys, and in consideration of the services rendered and
to be rendered by them in the matter, the said F. H. Fitz-
gerald and wife executed to these attorneys a deed convey-
ing to them an undivided one-half interest in the said lands.
The bill prayed that the deed of conveyance from John S.
Cammack and wife to appellees be set aside and declared
void as against the complainants as a cloud on their title
to said lands, and that an accounting be had of the rents
and profits of said land since the death of John S. Cam-
mack. The answer of the respondents was in effect a gener-
al denial of the allegations of the bill.

Upon the trial of the cause oral and documentary evi-
dence was introduced, and in much of the testimony offer-
ed by the parties there is no conflict. It appears from this
testimony that, after John S. Cammack and wife entered
into possession of the land in controversy, they executed a
deed of trust on the land in favor of the Colonial & United
States Mortgage Company, Limited, to secure the sum of
fifteen hundred dollars, the deed of trust being dated July
22, 1902, and the indebtedness due January 1, 1907; that
the note secured by this deed of trust was executed jointly
by the grantors, and that the deed of trust contained cove-
nants of warranty of title on behalf of the grantors; that
thereafter, on January 10, 1907, the said John S. Cammack
and wife executed a second deed of trust, covering the same
property, for the benefit of one W. S. Campbell, to secure
the payment of an indebtedness of two thousand seven
hundred and fifty-eight dollars, due November 1, 1907, and
that this second deed of trust likewise contained general
covenants of warranty of title, and the note secured there-
by was signed by both grantors; that, the indebtedness to
the said W. S. Campbell not being paid at maturity, the
deed of trust securing this indebtedness was foreclosed,
and the said W. S. Campbell became the purchaser thereof
at the foreclosure sale; that thereafter, in December, 1908
the said John S. Cammack entered into negotiations with

44

appellees to become the purchasers of the land; that a conference was had with W. S. Campbell, and, in order to complete the transaction, the said Campbell agreed to reconvey the property to John S. Cammack and wife upon the payment to him by appellees of the full amount of the indebtedness originally due him by the Cammacks; that appellees demanded that the wife, Lula Faye Cammack, join in the deed, and that on the 18th day of December, 1908, the said John S. Cammack and wife executed their general warranty deed conveying said lands to appellees for a consideration of ten thousand seven hundred and eighty-two dollars; that as a part of such consideration appellees paid to W. S. Campbell the amount of the original indebtedness to him, and also paid the indebtedness due by the Cammacks to the Colonial & United States Mortgage Company, as well as some other smaller items of indebtedness against the property, the balance of the consideration being paid in cash to John S. Cammack; that on December 19, 1908, the said W. S. Campbell reconveyed the said land to John S. Cammack and wife, Lula Faye Cammack. There was much testimony offered by both parties upon the question of whether the land in controversy was in fact the homestead of the Cammacks at the time of the sale to appellees, and the testimony on this point is in sharp conflict. The testimony as to the alleged coercion of the wife is also conflicting, and the decree of the chancellor expressly found the facts in favor of defendants. A finding that the land in controversy was not the homestead of the vendors at the time of the sale, and that the wife was not coerced into signing the deed, is amply supported by the testimony.

The sole question persented for decision is whether, under the facts in evidence, the title acquired by Lula Faye Cammack by inheritance from her son, Leonard, passed to her vendees by virtue of her express warranty. That an outstanding paramount title acquired by a warrantor cannot be used to defeat the title of the warrantee, but will inure to the benefit of the warrantee, is established by a long

line of cases in this state, and, as said in *Saw Mill Co.* v. *Douglas,* 107 Miss. 678, 65 So. 885, this is a familiar principle of law, and needs no citation of authorities. Do the facts in evidence here remove this case from the application of this familiar principle? We think not.

Since the enactment of our statute abolishing the disabilities of coverture (section 2517, Code of 1906; section 2051, Hemingway's Code) it is, of course, conceded that a married woman is as free to contract and is bound like and to the same extent as a man would be under the same circumstances, and etiher the husband or the wife may convey his or her land, except the homestead, without the joinder of the other. Under the finding of the chancellor that the land in controversy here was not the homestead of the vendors at the time of the sale thereof, there was no sort of necessity for the wife to join the husband in the conveyance of this land for conformity, and since, upon the demand of the proposed purchaser that she should do so, and in order to effect a sale and recover something out of land which had already been lost to them by reason of a trustee's sale thereof, she did join in a warranty deed purporting to convey the fee, she and her heirs are now estopped to assert an after-acquired title against her warrantees. *Kaiser* v. *Earhart,* 64 Miss. 492, 1 So. 635; *Leflore County v. Allen,* 80 Miss. 298, 31 So. 815.

In *Leflore County v. Allen, Supra,* Allen and his wife both deeded certain lands to the county to repay a shortage of Allen as county treasurer. Allen joined with his wife in the conveyance of her separate property, and after the death of Mrs. Allen her children brought an action against the county to recover the lands, and, so far as the interest of the children was concerned, Mrs. Allen's deed was set aside on the ground that it had been signed under duress, but it was held that, by reason of Mr. Allen's joinder in the wife's deed, he was estopped to assert the one-sixth interest when he inherited from his wife, and that the county acquired a good title to the interest which Allen

inherited from his wife. Judge CALHOON, speaking for the court, said:

"When Mrs. Allen died her husband, J. K. Allen, with her five children, each became the owner of a one-sixth interest in her lands. As soon as it thus inured to him, as the chancellor correctly held, he and his heirs were estopped, because of his deed to the county, from claiming this one-sixth interest from the county. There was no sort of necessity for him to join his wife in her deed for conformity. Under the law, then, either might convey his or her land, not being homestead, without the joinder of the other. But he did join, and used the word 'convey.' "

It is said by counsel for appellants that, while it is true that the courts of those states in which the disabilities of married women have been completely removed have generally held that a married woman is estopped by joinder in the husband's deed, these cases all proceed upon the assumption that the woman had an interest in the property or, received the benefit, or misled and induced some one to rely on her covenants in her deed to their injury. Measured by this test, appellant's case must fail. If it be conceded that Mrs. Cammack received no part of the six thousand dollars paid to her husband and received no benefit therefrom, yet it clearly appears from the evidence that she was jointly liable with her husband on certain promissory notes for large sums, and that, as a part of the consideration for the sale of this land, the purchaser paid these notes and thus discharged her personal liability thereon, and to that extent Mrs. Cammack received the benefit of the sale.

It follows from the views herein expressed that the decree of the court below must be affirmed.

*Affirmed.*