686 F.2d 1096
 Henry G. MILLS, et al., Plaintiffs-Counterdefendants-Appellees,
v.
DAMSON OIL CORPORATION, et al., Defendants-Cross Defendants-Appellees,
J. S. Wheless, Jr., et al.,
Defendants-Counterplaintiffs-Cross Plaintiffs- Appellants.
 No. 81-4048.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 14, 1982.
Rehearing Denied Nov. 2, 1982.
See 691 F.2d 715.
 
 Charles G. Copeland, Harry E. Neblett, Jr., Jackson, Miss., for J. S. Wheless, Jr.
 Stanford Young, Waynesboro, Miss., for Henry G. Mills.
 Ed Brunini, Jr., Jackson, Miss., for Damson Oil Corp.
 Matthew Harper, Jr., Laurel, Miss., for Southeastern Oil Co.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before GOLDBERG, WILLIAMS and GARWOOD, Circuit Judges.
 GARWOOD, Circuit Judge:
 
 
 1
 This is an appeal from a judgment for appellees cancelling appellants' title claims to minerals. Because the disposition of this appeal raises important unresolved questions concerning the Mississippi real property law of constructive notice to bona fide purchasers and the doctrine of after-acquired title, we have decided to certify these questions to the Supreme Court of Mississippi pursuant to that court's certification procedure, Miss.Sup.Ct.R. 46.[1]
 
 I.
 FACTS
 
 2
 The Federal Land Bank of New Orleans owned the surface and all of the minerals under a tract of land in Wayne County, Mississippi. On September 22, 1936, the Land Bank conveyed the surface estate and 1/2 of the mineral estate to Claude Mills. On October 16, 1940, Claude and his wife, Sue Bettie Mills, conveyed a 1/4 mineral interest in the tract to Lurline Daws, this being all of their mineral interest in the tract less a 1/4 interest they had previously conveyed to C. R. Ridgway, which is not at issue in this lawsuit. The mineral deed to Lurline Daws (the "Daws Deed") was filed for recordation on October 23, 1940. The acknowledgment of Claude and Sue Bettie Mills was taken by Lurline Daws's husband, S. B. Daws, who was Deputy Chancery Clerk of Wayne County.
 
 
 3
 On October 17, 1940, one day after the conveyance to Lurline Daws, Claude and Sue Bettie Mills conveyed a 3/16 mineral interest in the same tract to appellant J. S. Wheless, Jr. ("Wheless") by a mineral deed (the "Wheless Deed"). This conveyance was procured through the efforts of Wheless's agent, Byron Glasco.[2] The Wheless Deed was filed for recordation on October 25, 1940.
 
 
 4
 On October 9, 1943, Lurline Daws conveyed her 1/4 mineral interest in the tract to S. B. Daws. On July 20, 1959, S. B. Daws conveyed a 1/16 interest in the minerals to Charles Ray Mills, who, on October 21, 1960, conveyed his interest to Sue Bettie Mills.
 
 
 5
 Appellees[3] derive their title claims to the minerals through the Daws Deed; appellants[4] derive their title claims through the Wheless Deed. The conveyances which comprise the parties' chains of title are set forth in Appendix A.
 
 
 6
 In 1977, those appellees who are the heirs of Sue Bettie Mills (the "Mills appellees") brought suit against appellants and appellees Damson Oil Co., C. F. Brown & Co., Ballard & Cordell Corp., and James A. Patterson (the "Damson appellees") in the Chancery Court of Wayne County, Mississippi, to cancel, as a cloud upon their title, the claims of appellants and the Damson appellees to the 1/16 interest in the minerals acquired by Sue Bettie Mills in 1960.
 
 
 7
 There being complete diversity, appellants and the Damson appellees removed the action to federal district court, and appellants then counterclaimed against the Mills appellees and the rest of the appellees who derived a title claim under the Daws Deed. Appellants also cross-claimed against the Damson appellees. Appellants asked the district court to confirm in them title to a 3/16 interest in the minerals as successors in title to Wheless, or alternatively, to confirm their title claim to the 1/16 interest acquired by Sue Bettie Mills in 1960, which they assert passed to them by the doctrine of after-acquired title.
 
 
 8
 After a bench trial, the district court rendered judgment cancelling the appellants' claim to a 3/16 interest in the minerals. Although the court found that the Daws Deed was defectively acknowledged, because the acknowledgment was taken by Lurline Daws's husband, S. B. Daws, and that it did not impart constructive notice to appellants, the court held that the defect in the acknowledgment was cured by a curative statute passed by the Mississippi Legislature in 1954. The court also found that Wheless, through his agent, Glasco, and the remaining appellants[5] had actual notice of the Daws Deed, and that appellants failed to establish themselves as bona fide purchasers.[6] Finally, the district court rejected appellants' claim that they acquired a 1/16 mineral interest in the property through the doctrine of after-acquired title as a result of Sue Bettie Mills's joinder in the Wheless Deed and her subsequent acquisition of a 1/16 interest in 1960.
 
 II.
 BONA FIDE PURCHASER STATUS
 
 9
 For appellants to be entitled to an aggregate 3/16 mineral interest in the tract derived through the Wheless Deed, each appellant must have proved in the court below that either he or one of his predecessors in title was a bona fide purchaser, that is, a purchaser for a valuable consideration without actual or constructive notice of the Daws Deed. Woodruff v. Bates, 210 Miss. 894, 50 So.2d 559 (1951); Equitable Sureties Co. v. Sheppard, 78 Miss. 217, 28 So. 842 (1900).
 
 A. Valuable Consideration
 
 10
 In Mississippi, a purchaser of land, in order to protect himself from an outstanding unrecorded title, as a bona fide purchaser, must have paid a valuable consideration. Doss v. Armstrong, 7 Miss. 258, 260 (1842). A valuable consideration is paid by one who, at the time of his purchase, advances a new consideration, surrenders some security, or does some other act which, if his purchase were set aside, would leave him in a worse position than that which he occupied before the purchase. Boon v. Barnes, 23 Miss. 136, 139 (1851); Newell v. Crider, 50 Miss. 539, 544 (1874).
 
 
 11
 The district court found that the appellants failed to introduce any testimony that they paid a valuable consideration for the minerals. We disagree.
 
 
 12
 Appellants introduced into evidence the deeds which comprised their chains of title. The deeds which comprise the chains of title of appellants Wheless, Cocke, Mortimer, and Harrell all recite payment or exchange of valuable consideration for the mineral interest conveyed.[7] The conveyances from Wheless to appellant Trotter, however, do not import a valuable consideration. The conveyance to appellant Trotter, as Trustee of the Joseph Sydney Wheless, Jr. 1974 Trust indicates a donative intent on Wheless's part.[8] The conveyance to appellant Trotter, as Independent Executor of the Estate of Ada Nance Wheless, indicates a voluntary recognition on Wheless's part of his deceased wife's community property interest in the mineral interest concerned.[9] Since the conveyance from Claude and Sue Bettie Mills to Wheless himself, however, recites a valuable consideration, appellant Trotter, both as Trustee of the Wheless Trust and as Independent Executor of Mrs. Wheless's estate, may take advantage of the recitals of valuable consideration in the Wheless Deed.
 
 
 13
 Other than the recitals of consideration in the deeds, there is no evidence of the payment of any consideration by any of the grantees therein. In Mississippi, however, a conveyance that acknowledges payment or receipt of valuable consideration is prima facie evidence that the grantee therein was a purchaser for a valuable consideration without notice, and places the burden of going forward to establish notice or the falsity of the recital of consideration on the party attacking the deed. Hiller v. Jones, 66 Miss. 636, 6 So. 465 (1889); Atkinson v. Greaves, 70 Miss. 42, 11 So. 688 (1892); Burks v. Moody, 141 Miss. 370, 106 So. 528, suggestion of error overruled, 141 Miss. 370, 107 So. 279 (1926); Rollings v. Rosenbaum, 166 Miss. 499, 148 So. 384 (1933).
 
 
 14
 Appellees failed to discharge their burden of producing any evidence tending to show the falsity of the recitals of consideration in the appellants' chains of title. Thus, the recitals of consideration in appellants' chains of title, except for those in the conveyances from Wheless to Trotter, were sufficient evidence of payment of a valuable consideration. We hold that the district court's finding that appellants failed to show payment of a valuable consideration is clearly erroneous. All appellants therefore established that either they or one of their predecessors in title paid a valuable consideration for the minerals.
 
 B. Actual Notice
 
 15
 Under Mississippi law, a prior deed, whether recorded or unrecorded, is good against a subsequent purchaser with actual notice of it. Dixon v. Lacoste, 9 Miss. 70, 107 (1843); Claiborne v. Holmes, 51 Miss. 146 (1875); Henderson v. Cameron, 73 Miss. 843, 20 So. 2 (1896); Ladnier v. Stewart, 38 So. 748 (Miss.1905).
 
 
 16
 It is undisputed that the Daws Deed was made before the Wheless Deed. The district court found that all appellants had actual notice of the Daws Deed when they acquired their interest in the minerals. Appellants, however, contend that these findings are clearly erroneous.
 
 
 17
 At trial, S. B. Daws testified that Wheless's agent, Glasco, came to the Chancery Clerk's office, where Daws was employed as Deputy Clerk, sometime on or after October 22, 1940, the day the Daws Deed was filed for recordation, and before October 25, 1940, the day the Wheless Deed was filed for recordation. Glasco had the Wheless Deed, which was unacknowledged, and a draft. Daws testified that Glasco said that Claude Mills told him to give Mr. Daws the draft because it belonged to him. Daws told Glasco that Lurline Daws owned the minerals, and he showed Glasco the Daws Deed. Glasco did not testify.
 
 
 18
 In Mississippi, a purchaser of land is not a bona fide purchaser unless he takes a conveyance and pays the purchase price before he receives actual notice of a prior deed. Harper v. Reno, Freem. Ch. 323, 336 (1843). If the purchaser receives notice before payment of the purchase price, then he will be bound by it, and will be denied the protection given a bona fide purchaser. Parker v. Florer, 43 Miss. 260, 265 (1870); Kilcrease v. Lum, 36 Miss. 569, 571-572 (1858). "Notice or knowledge by an agent who is examining title or making a purchase for a principal, acquired at such time or while he is investigating the title, is notice to and equivalent to knowledge of such buyer." Biles v. Walker, 121 Miss. 98, 83 So. 411, 412 (1920).
 
 
 19
 The Wheless Deed recites that Wheless paid Claude and Sue Bettie Mills "$10.00 and other good and valuable consideration" for the conveyance. Although the testimony of S. B. Daws may not establish the falsity of this recital, it does establish that Wheless, through his agent, received actual notice of the Daws Deed before payment of consideration was actually made to, or accepted by, Claude and Sue Bettie Mills. Wheless was not therefore a bona fide purchaser. We hold that the district court's finding that Wheless had actual notice of the Daws Deed is supported by sufficient evidence and is not clearly erroneous.
 
 
 20
 There is, however, no evidence that any of the appellants or their predecessors in title, other than Wheless, had actual notice of the Daws Deed, or possessed any knowledge of circumstances that would have put them on inquiry, which, if pursued, would have led them to actual knowledge of the Daws Deed. Baldwin v. Anderson, 103 Miss. 462, 60 So. 578 (1913); Johnson v. Carter, 193 Miss. 781, 11 So.2d 196 (1943); Bowen v. Thornton, 227 Miss. 562, 86 So.2d 505 (1956). Nor do any of the deeds in the appellants' chains of title contain any recitals which would have put them on inquiry or given them notice of the Daws Deed. Deason v. Taylor, 53 Miss. 697, 701 (1876); Adams v. Hill, 208 Miss. 341, 44 So.2d 457 (1950); Burkett v. Peoples Bank of Biloxi, 225 Miss. 291, 83 So.2d 185, modified, 225 Miss. 291, 83 So.2d 763 (1955). Furthermore, the fact that Wheless had actual notice of the Daws Deed does not prevent the remaining appellants or their predecessors in title from being bona fide purchasers. Innocent purchasers for a valuable consideration who acquire title to land without notice of a prior deed are protected even though their immediate grantor or any grantor in their chain of title had actual knowledge of a prior deed. Simmons v. Dantzler, 152 Miss. 428, 118 So. 829 (1928); Parker v. King, 235 Miss. 80, 108 So.2d 224, 226 (1959). But even though Wheless's knowledge of the Daws Deed is not imputed to the appellants, the fact that Wheless is not a bona fide purchaser does serve to defeat the title claims of appellant Trotter. Because the recitals in the deeds from Wheless to Trotter failed to recite a valuable consideration, Trotter's title claims were dependent upon his sole predecessor in title, Wheless, being a bona fide purchaser. Because we have determined that Wheless is not a bona fide purchaser, Trotter's title claims must also fail.
 
 
 21
 We hold that the district court's finding that the appellants and their predecessors in title, other than Wheless, had actual notice of the Daws Deed is clearly erroneous.
 
 
 22
 Because the appellees failed to show that appellants had actual notice of the Daws Deed, the proof that appellants Harrell, Mortimer, and Cocke, and their predecessor in title paid a valuable consideration for the minerals is, under Mississippi law, sufficient evidence to establish want of notice. Atkinson v. Greaves, 70 Miss. at 45, 11 So. 688. Except for Wheless, these appellants therefore established that they and their predecessors in title did not have actual notice of the Daws Deed.
 
 C. Constructive Notice
 1. The Acknowledgment to the Daws Deed
 
 23
 The Daws Deed was procured by Mrs. Daws's husband, S. B. Daws, who, acting in his capacity as Deputy Chancery Clerk of Wayne County, also took the acknowledgment of Claude and Sue Bettie Mills to the Deed.[10] The district court, relying on Jones v. Porter, 59 Miss. 626, 633 (1882), held that because Mr. Daws took the acknowledgment it was defective and was not entitled to be recorded. In Jones, the Supreme Court of Mississippi held that where the acknowledgment of a grantor was taken by the husband of the grantee, who was the procuring cause of the conveyance, the acknowledgment was void.
 
 
 24
 Appellees attempt to distinguish Jones from the instant case by arguing that it was a fraud case, and that its holding is limited to circumstances where fraud is apparent. There is no evidence of fraud in this case, but a careful reading of the Jones opinion, and of Wasson v. Connor, 54 Miss. 351, 352-353 (1877), on which the court in Jones relies, reveals that the court's holding was not based on the fraud committed on Mrs. Porter, but on the fact that, under Mississippi law, the taking of an acknowledgment is a judicial or quasi-judicial rather than a ministerial act, and that this act cannot be performed by a grantee in the deed, or by one who, though not a grantee, is the procuring cause of the conveyance or has a financial or beneficial interest in the transaction. See also Johnston v. Wallace, 53 Miss. 331, 337 (1876); Harmon v. Magee, 57 Miss. 410, 415 (1879); Ogden Building & Loan Ass'n, 196 Ill. 554, 563, 63 N.E. 1049 (1902) and the cases cited therein.
 
 
 25
 It would be against public policy to permit a grantee, mortgagee, or trustee, or other person beneficially interested in the transaction to take an acknowledgment to an instrument in which he is named as a party or has a beneficial interest. The object of the law is to prevent the perpetration of fraud, and the policy of the law seems to be that the officer taking the acknowledgment must not be in such relationship to the grantee that there shall exist any temptation for the officer to do aught but his duty impartially. 1 Delvin on Real Estate and Deeds, § 477d (3d Ed. 1911).[11]
 
 
 26
 The evidence shows that Mr. Daws "made the trade" for his wife; that he prepared the deed; and that he paid the purchase price for the mineral interest out of a joint checking account.[12] Mr. Daws was the procuring cause of the conveyance, and he had a direct financial interest in the transaction.[13] Under Mississippi law, Mr. Daws was therefore disqualified from taking the acknowledgment to the Daws Deed.
 
 
 27
 Although appellees express doubt respecting the continued validity of the Jones decision, that case directly disposes of the issue before us, and it has never been overruled. We consider ourselves bound by it. We hold that the district court correctly held that the acknowledgment to the Daws Deed was void.[14]
 
 2. A Latent Defect
 
 28
 It is well settled in Mississippi that constructive notice is not imparted to bona fide purchasers by recording a defectively acknowledged deed. Ligon v. Barton, 88 Miss. 135, 40 So. 555 (1906); Elmslie v. Thurman, 87 Miss. 537, 40 So. 67 (1906); Smith v. McIntosh, 176 Miss. 725, 170 So. 303 (1936). The cases just cited, and most of the cases which describe the nature of the defect involved, concern defects which are apparent on the face of the acknowledgment. It is undisputed, however, that the defect in the acknowledgment to the Daws Deed is entirely latent. There is nothing in the deed or its acknowledgment to indicate that the named grantee, Lurline Daws, and S. B. Daws, who took the acknowledgment, were related to each other, or, indeed, that either was married. The question therefore arises whether, under Mississippi law, an acknowledgment, which is regular on its face, but contains a defect which is entirely latent, imparts constructive notice to a bona fide purchaser.
 
 
 29
 We have been cited to only one Mississippi case that discusses the effect of a latent defect in an acknowledgment on bona fide purchasers.[15] Its holding concerns the effect of such a defect on a Chancery Clerk rather than on a bona fide purchaser.
 
 
 30
 In Roebuck v. Bailey, 176 Miss. 234, 166 So. 358 (1936), Bailey executed a deed of trust on his real property to the Bank of Union. The acknowledgment to the deed of trust showed on its face that it was taken in Newton County before a Newton County Notary Public. Afterwards, Bailey failed to pay taxes on the property, and it was sold at a tax sale to Kent. Before the property was sold to Kent, however, the Chancery Clerk failed to perform his statutory duty of notifying Bailey and the Bank of Union of the tax sale. After the tax sale, Roebuck, who was the receiver for the bank, filed suit in the chancery court to foreclose the deed of trust and to cancel the title of Kent and those claiming under him.
 
 
 31
 At trial, the evidence established that the deed of trust was acknowledged, not in Newton County as recited in the acknowledgment, but in Lauderdale County. The chancellor held that the acknowledgment, having been taken outside the jurisdiction of the notary public, was void, and that the tax sale properly vested title in Kent. The chancellor also held that purchasers at tax sales are not bona fide purchasers, and that because the acknowledgment to the deed of trust was defective, the Chancery Clerk was under no duty to give notice of the tax sale to Bailey or to the bank.
 
 
 32
 The Supreme Court of Mississippi sustained the bank's appeal, holding that the tax sale was void as to the bank. The court stated that the chancellor "was correct in holding that the acknowledgment taken before a notary public not acting within the county of his appointment was void as to bona fide purchasers;" however, the court held that:
 
 
 33
 (T)he (lower) court was in error in holding that the clerk was under no duty to give notice (to the bank and to Bailey), because of the defective acknowledgment. We do not now pass upon the effect of what such failure would be if the record showed, on its face, that the acknowledgment was void, but we think it a safe course to hold the clerk to the performance of his duty to give notice of what appeared on his record. 166 So. at 360.
 
 
 34
 The basis of the court's holding was that the Chancery Clerk was required to notify lienholders of a tax sale, even though the recordation of their lien contained a latent defect, and that Kent, being a purchaser at a tax sale, was not a bona fide purchaser. The court's statements regarding whether the latently defective acknowledgment imparted constructive notice to a bona fide purchaser was therefore dicta, since there was no bona fide purchaser in the case. We also note that the court cited no authority for those statements, and we have found no reported decision which has relied on them. Moreover, the court recognized a potential distinction between latently and patently defective acknowledgments, and its actual holding was that recordation of an instrument with a void acknowledgment was effective for some purpose where the defect was latent.
 
 
 35
 Although dicta in Roebuck may indicate the holding of a Mississippi court if squarely presented with this issue, in view of the importance of this question, and the effect of the answer to it on land titles in Mississippi, we are unwilling to hold, in the absence of a clear precedent, that a latently defective acknowledgment does not impart constructive notice to bona fide purchasers. We are of the opinion that this important question should be answered by the Supreme Court of Mississippi.[16]
 
 
 36
 Should the Supreme Court decide that the acknowledgment to the Daws Deed imparted constructive notice to bona fide purchasers, then none of the remaining appellants (Harrell, Mortimer, and Cocke) will be bona fide purchasers since they and their predecessors in title will have had constructive notice of the Daws Deed.
 
 3. The Curative Statute
 
 37
 If, however, the Supreme Court of Mississippi should decide that the acknowledgment to the Daws Deed is void, though the defect therein is entirely latent, and does not impart constructive notice to bona fide purchasers, then the question arises whether the defect was cured by Miss.Code Ann. § 89-5-13, which was passed by the Mississippi Legislature on April 22, 1954. This statute, entitled "An act to provide a curative statute for deeds containing defective acknowledgments which have been recorded 20 years or more," provides:
 
 
 38
 Whenever a deed has been of record 20 years or more in the land records in the county in which the said land is located, the same shall be presumed to have been upon lawful authority; and that the acknowledgment shall be good without regard to the form of certificate of acknowledgment.
 
 
 39
 The district court held that the acknowledgment to the Daws Deed was cured by this statute. Appellants attack the application of the statute to this case by raising two serious questions: (1) whether the statute cures the type of defect present in the acknowledgment to the Daws Deed, and (2) if so, whether constructive notice can be imparted by the Daws Deed to those who acquired their mineral interests in the property before the passage of the curative statute, namely, C. M. Dorchester, appellants Harrell and Mortimer, who claim through Mr. Dorchester, and Gus F. Schreiner, under whom appellant Cocke claims.
 
 
 40
 First, appellants argue that the wording of the statute itself confines its application to defects in "the form of certificate of acknowledgment," and that it does not apply where the defect is the incompetency of the officer who takes the acknowledgment, rather than anything related to the form of the certificate. The wording of the statute supports appellants' position. As appellees point out, however, the act is a remedial statute, which should be liberally construed to effect its dominant purpose, which is to cure defective acknowledgments to deeds which have been of record for at least 20 years. Viewed in this light, appellants' construction of the statute may be contrary to its spirit and policy.[17]
 
 
 41
 Second, appellants argue that a retroactive application of the statute to impart constructive notice to those who acquired their mineral interests before its passage would interfere with vested rights. Appellants cite many authorities which hold that a curative statute cannot destroy the rights of third persons, particularly those of bona fide purchasers, which become vested before passage of the act: Steger v. Traveling Men's Building Ass'n, 208 Ill. 236, 243-245, 70 N.E. 236 (1904); Finders v. Bodle, 58 Neb. 57, 60-61, 78 N.W. 480 (1899); Barrett v. Barrett, 120 N.C. 127, 129-131, 26 S.E. 691 (1897); Cooper v. Harvey, 21 S.D. 471, 478, 113 N.W. 717 (1907); Fugman v. Jiri Washington Building and Loan Ass'n, 209 Ill. 176, 179, 70 N.E. 644 (1904); 1 Delvin § 547b; 1 C.J.S. Acknowledgments § 120b(1), p. 878; 1 Am.Jur.2d, Acknowledgments § 114, p. 524.
 
 
 42
 Because there are no Mississippi decisions to guide us in interpreting the application or retroactive operation of the curative statute, we are unable to answer the questions raised by appellants. We have decided therefore to certify them to the Supreme Court of Mississippi.
 
 
 43
 If the Supreme Court decides that the statute cured the defect in the acknowledgment to the Daws Deed, and that it applied to conveyances made before its passage, then none of the appellants will be bona fide purchasers, since they and their predecessors in title will have had constructive notice of the Daws Deed. If, however, the Supreme Court decides that the statute cured the defect but that it may not be applied to conveyances made before its passage, then appellants Cocke, Harrell, and Mortimer will be bona fide purchasers, since at least one of their predecessors in title had no constructive notice of the Daws Deed (unless the Court determines that recording of a defectively acknowledged deed gives constructive notice, unaided by the curative statute, if the defect is entirely latent).
 
 III.
 AFTER-ACQUIRED TITLE
 
 44
 On October 21, 1960, Sue Bettie Mills acquired a 1/16 mineral interest in the land in question from Charles Ray Mills, who had acquired it from S. B. Daws on July 20, 1959. Because Sue Bettie Mills joined her husband, Claude Mills, in executing the Wheless Deed, which purported to convey a 3/16 mineral interest in the same land, appellants contend that even if the Wheless Deed, in fact, failed to pass any interest to them, then the doctrine of after-acquired title operated to vest in them, specifically appellant Cocke, the 1/16 interest acquired by Sue Bettie Mills in 1960. The district court, however, rejected the application of this doctrine against Sue Bettie Mills for two reasons.
 
 A. Homestead
 
 45
 The district court found that the minerals were owned by Claude Mills as his separate property, and that Sue Bettie Mills had no mineral interest at the time of the conveyance to Lurline Daws and to Wheless. Based on these findings, the court concluded that:
 
 
 46
 Her only apparent reason for signing the deed (to Wheless) was to convey any homestead interest that she may have had. Years later she received in her own name the 1/16 interest to these minerals. However, this is an entirely different estate or interest in the minerals. The Doctrine of After Acquired Title can only pass the interest which was conveyed at the time of the original deed. At that time Mrs. Sue Bettie Mills conveyed only her homestead interest, and the Doctrine of After Acquired Title will not operate to enlarge that interest to the entirely different and separate interest received many years later.
 
 
 47
 At common law, a married woman was not estopped by the covenants in her own deed, or by those in a deed of her husband in which she joined. See Sanford v. Kane, 133 Ill. 199, 207, 24 N.E. 414 (1890). In Taylor v. Eckford, 19 Miss. 21 (1848), however, the High Court of Errors and Appeals held that a wife was in privity of estate with her husband, and that a purchase by her of a paramount title inured by operation of law to the benefit of a prior grantee of her husband. This decision, insofar as it held that a wife was in any manner bound by the deed alone of her husband, was overruled in Cameron v. Lewis, 59 Miss. 134, 138-139 (1881)[18] and in Carter v. Bustamente, 59 Miss. 559, 560 (1882). In Carter, the grantor's wife did not join in his deed to the grantee. In holding that the wife could assert an after-acquired title against her husband's grantee, the Supreme Court stated:
 
 
 48
 (T)he wife is not bound by the deed or covenants of the husband; she is not either a party or privy to the deed; she is not liable to an action on its covenants, and her title cannot be divested or affected by the operation thereof. 59 Miss. at 560.
 
 
 49
 The Court in Cameron intimated that a married woman in Mississippi would not be estopped by her covenants of warranty in her own deed or in a deed in which she joined:
 
 
 50
 It is indeed much mooted whether a married woman is estopped by her own deed from acquiring a title adverse to that conveyed by her, and the decided weight of authority elsewhere is that she is not. 59 Miss. at 139.
 
 
 51
 In Fitzgerald v. Allen, 126 Miss. 678, 89 So. 146 (1921), however, a wife, who joined her husband in a conveyance of his non-homestead land, was held bound by the covenants of warranty in the deed and estopped to assert an after-acquired title against the grantee:
 
 
 52
 Since the enactment of our statute abolishing the disabilities of coveture (Section 2517, Code of 1906, section 2051, Hemmingway's Code) it is, of course, conceded that a married woman is as free to contract and is bound like and to the same extent as a man would be under the same circumstances, and either the husband or the wife may convey his or her land, except the homestead, without the joinder of the other. Under the finding of the Chancellor that the land in controversy here was not the homestead of the vendors at the time of the sale thereof, there was no sort of necessity for the wife to join the husband in the conveyance of this land for conformity, and since, upon the demand of the proposed purchaser that she should do so, and in order to effect a sale thereof, she did join in a warranty deed purporting to convey the fee, she and her heirs are now estopped to assert an after-acquired title against her warrantees. 126 Miss. at 691, 89 So. 146.
 
 
 53
 In support of its holding, the court in Fitzgerald relied on Leflore County v. Allen, 80 Miss. 298, 31 So. 815 (1902) and on Kaiser v. Earhart, 64 Miss. 492, 1 So. 635 (1887).
 
 
 54
 In Leflore County, Allen and his wife deeded their land, some of which was the wife's separate property, to the county. After Mrs. Allen's death, her children sued to set aside the deed of her separate property on the ground that she was forced to sign it under duress. The chancellor set aside the deed as to the children, but held that Mr. Allen was estopped to assert against the county the interest which he inherited from his wife. In affirming the chancellor's decree, the Supreme Court held:
 
 
 55
 When Mrs. Allen died her husband, J. K. Allen, with her five children, each became the owner of a one-sixth interest in her lands. As soon as it thus inured to him, as the chancellor correctly held, he and his heirs were estopped, because of his deed to the contrary. There was no sort of necessity for him to join his wife in her deed for conformity. Under the law, then, either might convey his or her land, not being homestead, without the joinder of the other. But he did join, and used the word convey. 31 So. at 816.
 
 
 56
 Thus, in Leflore County, as in Fitzgerald, the land in dispute was not homestead, and the spouse who was estopped was under no necessity of joining in the deed. Under these decisions, we might infer the Mississippi law to be that a spouse who joins in a conveyance of the other spouse's property, which is their homestead, is not bound by the covenants of warranty in the deed and may assert an after-acquired title against the grantee therein. But Kaiser v. Earhart, casts some doubt on the validity of the foregoing statement of law, at least insofar as the spouse asserting an after-acquired title is the husband.
 
 
 57
 In Kaiser, Earhart and his wife conveyed land, which was the wife's separate property, to Kaiser. According to the reporter's statement of the case, Mr. Earhart showed that the land in dispute was acquired by his wife in 1872, and was occupied by them as their homestead until Mrs. Earhart's death in 1882. The reporter's statement also states that the conveyance from the Earharts to Kaiser occurred in 1880. After Mrs. Earhart's death, Mr. Earhart inherited the property from her. Kaiser then sued Mr. Earhart for possession of the property, and Earhart defended by claiming that at the time of the conveyance his wife was insane and that the conveyance was void. The chancellor rendered judgment for Earhart, but the Supreme Court reversed, holding that even if Earhart's wife was insane, the doctrine of after-acquired title operated against Earhart to pass the title to Kaiser:
 
 
 58
 The conveyance was executed by (Mr. Earhart) and by the death of his wife he derived either the whole or a part of her title by descent. Whatever title was thus granted by him inured to the benefit of his grantee. 1 So. at 365.
 
 
 59
 This holding is consistent with the referenced inferences from the opinions in Leflore County and Fitzgerald only if the land concerned was not the Earhart's homestead and the 1880 Code applied to their conveyance to Kaiser, in which case Mr. Earhart's joinder in that conveyance was not required by law. See sections 1167 and 1193 of the 1880 Code. If, however, the property was Earhart's homestead, or if the 1871 Code applied, then Mr. Earhart's joinder would have been required by law. Compare section 1260 of the 1880 Code (husband's joinder required if homestead is separate property of his wife), with sections 2287 and 2315 of the 1871 Code (husband's joinder in conveyance of wife's separate property required whether or not that property is homestead). See also Ezell v. Parker, 41 Miss. 520, 527 (1867). If the latter were the situation, the court's holding in Kaiser would be contrary to the referenced inferences from the opinions in Leflore County and Fitzgerald.
 
 
 60
 The 1880 Code did not become effective until November 1, 1880, and the opinion in Kaiser does not reveal the exact date of the conveyance from the Earharts to Kaiser. Nor does the court's opinion discuss whether the property was in fact the Earhart's homestead or what effect the necessity, if any, of Mr. Earhart's joinder in the deed of his wife's separate property had on his right to assert an after-acquired title.
 
 
 61
 Moreover, neither Kaiser, Leflore County, nor Fitzgerald tell us whether the spouse's joinder in the deed was in any way limited on its face.[19]
 
 
 62
 In Griffin v. Sheffield, 38 Miss. 359 (1860), the High Court of Errors and Appeals held that a married woman, who joined in a mortgage of her husband's separate property which contained covenants of warranty, was not estopped by her joinder from afterwards acquiring an interest in the land adverse to the interests of the mortgagee.
 
 
 63
 That Catherine Rogers, the wife of the said Elijah, by joining him in the conveyance of his estate to the Union Bank, and relinquishing her right of dower, cannot be farther affected than to operate a divestiture of her contingent interest therein,-we think is the safe rule to be deduced from the authorities on this point, cited in the briefs of counsel. In such case, she is neither bound by the covenants in the deed, nor estopped beyond her interest, at the time of conveyance or relinquishment. 38 Miss. at 393.
 
 
 64
 It will be remembered that when this case was decided, the disabilities of coveture had not been abolished. Moreover, according to the reporter's statement of the case, the mortgage showed that the wife, Mrs. Rogers, was the "wife of the grantor" and the recitals in the mortgage spoke of her husband as the owner of the property.
 
 
 65
 In the instant case, the testimony of S. B. Daws showed that the minerals in dispute were Claude Mills's separate property and were part of the Mills's homestead.[20] Section 1778 of the 1930 Code, which was in effect when Sue Bettie Mills signed the Wheless Deed, required that a married woman, unless insane, sign a conveyance of the property of her husband, which was their homestead. Sue Bettie Mills's joinder to the Wheless Deed was therefore necessary for it to be valid and binding.[21]
 
 
 66
 There is, however, nothing in the Wheless Deed which expressly or impliedly limits the estate conveyed by Sue Bettie Mills to a relinquishment of her homestead interest in the minerals. On the contrary, both Claude and Sue Bettie Mills are named as grantors.[22] There is, moreover, no recitation that Sue Bettie Mills's joinder was made pro forma. The deed recites that Claude and Sue Bettie are husband and wife, but nowhere does it indicate, on its face, that the land (or the mineral interest) is part of the homestead or Claude's separate property.
 
 
 67
 Although Sue Bettie Mills's signature to the Wheless Deed may have been necessary to a valid and binding conveyance, there was no necessity for her to join in a deed in which she purported to convey more than she, in fact, owned. It appears to us that Sue Bettie Mills was free to limit her joinder to a release of her homestead interest only, but that she chose instead to expand the effect of her joinder to include a warranty of the entire interest conveyed.
 
 
 68
 Thus, we are presented with the question whether a married woman who joins in a conveyance of her husband's separate property, which is their homestead, is estopped to assert an after-acquired title in the property against the grantee, where the deed to that grantee contains, on its face, no indication, other than a recital that the grantors are husband and wife, that the property is either homestead or the separate property of the husband or that the wife's joinder is pro forma or limited to a relinquishment of her homestead interest.
 
 
 69
 Because we have been unable to find a Mississippi decision which has made a holding on the precise issue before us, and in view of the apparent conflict among the decisions we have found which discuss the issue, we have decided to certify the question to the Supreme Court of Mississippi.
 
 B. Grantee's Knowledge
 
 70
 If the doctrine of after-acquired title may be invoked against Sue Bettie Mills, then the question arises whether appellants, particularly Wheless, must be purchasers without notice to take advantage of it.[23] The district court held that appellants could not invoke the doctrine because they had actual notice of the Daws Deed:
 
 
 71
 The Doctrine of After Acquired Title is an equitable doctrine applied only to prevent fraud, or injustice. Clearly, if the grantee in the former deed (Wheless) knew that the grantor, in this case Sue Bettie Mills, did not own the minerals when he obtained the deed, then he was not defrauded in any way and did not lose anything when his claim was defeated. There is ample evidence in the record to show that J. S. Wheless, Jr., by and through his agent Byron Glasco, knew that Sue Bettie Mills owned no interest at the time he obtained the deed. He, therefore, does not receive any interest in the minerals in question through the application of the Doctrine of After Acquired Title. There is ample evidence in the record to show that the defendants and counter plaintiffs (appellants) had actual notice of the claim of Lurline T. Daws. This actual notice defeats their claim to the minerals as bona fide purchasers for value without notice, and further defeats their claim through the application of the Doctrine of After Acquired Title.
 
 
 72
 In Mississippi, "a warranty deed containing a covenant of general warranty, both at common law and under Mississippi statute, operates to estop the grantor from asserting an after acquired title or interest in the land for the estate which the deed purports to convey, as against the grantee and those claiming under him." Ethridge, The After-Acquired Property Doctrine And Its Application In Mississippi, 17 Miss.L.J. 153 (1945); see also Meyers v. American Oil Co., 192 Miss. 180, 5 So.2d 218, 220 (1941).
 
 
 73
 Mississippi Code Annotated § 89-1-33 provides:
 
 
 74
 The word 'warrant' without restrictive words in a conveyance shall have the effect of embracing all five of the covenants known to common law, to wit: seizin, power to sell, freedom from incumbrance, quiet enjoyment and warranty of title.
 
 
 75
 Under Mississippi law, a grantor is liable for breach of warranty even though the grantee has notice of an outstanding incumbrance. Sutton v. Cannon, 135 Miss. 368, 375, 100 So. 24 (1924).The rule that a subsequently acquired title passes by virtue of a prior deed was originally applied to avoid circuity of actions; for, if the vendor is permitted to recover the property under a title paramount subsequently acquired by him, he in turn would be bound to respond on his warranty. To avoid these cross actions, it has long been held that a title subsequently acquired by the vendor or any one bound by his warranty, should inure to the vendee to the same extent as if conveyed by original deed. Carter v. Bustamente, 59 Miss. 559, 560 (1882).
 
 
 76
 Wheless and the other appellants are entitled to sue Claude and Sue Bettie Mills for their breach of warranty even if they had notice of the defect in title.[24] It would appear therefore that the doctrine of after-acquired title would apply even though appellants had actual or constructive notice of the defective title.
 
 
 77
 We have found two Mississippi decisions which have allowed a grantee with actual knowledge of a defect in his grantor's title to invoke the doctrine of after-acquired title against the grantor.
 
 
 78
 In Fletcher v. Wilson, Smedes & M. Ch. 376 (1843), Fletcher, the grantee, took a conveyance from Wilson and Conn with actual knowledge of an outstanding title claim in Conn's wife. Conn and Wilson promised Fletcher to get Mrs. Conn to sign the deed, but she refused. Later, Wilson and Conn sued Fletcher to secure the payment of the purchase price of the property. Fletcher also filed suit seeking a rescission of the purchase. Meanwhile, Mrs. Conn had died leaving Wilson as her sole heir. Although the Superior Court of Chancery held that Fletcher's knowledge of the title defect prevented him from obtaining a rescission, the chancellor stated that the doctrine of after-acquired title operated against Wilson in favor of Fletcher:
 
 
 79
 I think that the complainant's (Fletcher's) title became complete and perfect upon the death of Mrs. Conn, through the operation of the previously executed and delivered deed of Wilson. The title cast upon him by the death of his sister, enured to the benefit of the complainant. No principle is better settled or more consonant to reason, than that where a person sells property under a defective claim, and afterwards, by purchase or descent, becomes clothed with a perfect title, that title will enure to the benefit of his vendee. But even if the title of the complainant was not perfected in this way, still, if the defendants are now ready to perfect it, he cannot, I apprehend, have a rescission on account of delay to do so.
 
 
 80
 I am hence of the opinion that the contract should not be rescinded, and shall, accordingly, direct the original and amended bill (of Fletcher) to be dismissed, unless the complainant now claims a specific performance, under the prayer of the original bill; if so, a decree to that effect will be ordered. Id. at 388-391.
 
 
 81
 In Garner v. Garner, 117 Miss. 694, 78 So. 623 (1918), S. Garner and W. C. Garner were tenants in common in a tract of land. Both men executed a deed of trust on the property to Abrams. Afterwards, S. Garner executed a general warranty deed to W. C. Garner which purported to convey title to the entire tract, not merely his 1/2 interest therein. After this conveyance, the deed of trust was foreclosed, and S. Garner bought the property at the foreclosure sale. Meanwhile, W. C. Garner had died and one of his heirs, Clinton Garner, sued S. Garner to recover a 1/2 interest in the property which Clinton inherited from W. C. Garner. The chancellor decreed that Clinton Garner was entitled to recover only a 1/4 interest in the tract.
 
 
 82
 On appeal, the Supreme Court reformed the chancellor's decree to vest in Clinton Garner a 1/2 interest in the tract:
 
 
 83
 (I)t is settled law that the execution and delivery of a warranty deed estops the grantor from thereafter acquiring any adverse title or interest in the land conveyed and that any subsequently acquired title inures to the benefit of the grantee. If the vendor at the time his deed is made owns only an undivided one-half interest, but his deed purports to convey the entire fee, a subsequently acquired title to the other half interest passes eo instanti to the vendee. Edwards v. Hillier, 70 Miss. (803), 807, 13 So. 692. It makes no difference how the grantor acquires his belated title, a title through an outstanding deed of trust operates in favor of the grantee. Harris v. Byers, 112 Miss. 651, 73 So. 614. So it is that under previous adjudications in this and other jurisdictions the title acquired by appellant through the deed of W. A. Abrams, trustee, inures to the benefit of W. C. Garner and his heirs, and W. C. Garner at the time of his death owned the entire fee. Appellee Clinton Garner, as an heir at law, inherited an undivided one-half interest, and this interest he was entitled to recover in this suit. 78 So. at 624-625.
 
 
 84
 Although the opinion does not discuss the effect of W. C. Garner's knowledge of his own half interest and the deed of trust, or the effect of this knowledge on his heirs, W. C. Garner presumably knew S. Garner owned only a one-half interest and W. C. Garner plainly had actual knowledge of the deed of trust in which he himself joined as a grantor. Such knowledge did not prevent W. C.'s heirs from invoking the doctrine of after-acquired title.
 
 
 85
 Aside from the effect of actual knowledge on the ability of a grantee to invoke the doctrine, there is also a dearth of authority on the effect of a grantee's constructive knowledge of a title defect in his grantor.[25] In Meyers v. American Oil Co., 192 Miss. 180, 5 So.2d 218 (1941), however, the Supreme Court allowed a grantee with constructive notice of a defect in the grantor's title to invoke the doctrine of after-acquired title.
 
 
 86
 The decisions in Fletcher, Garner, and Meyers, have not been explicitly questioned or overruled. Two later decisions, however, have by language in the opinions explicitly questioned the application of the doctrine where a grantee has knowledge of a title defect when he receives a conveyance.
 
 
 87
 In Buchanan v. Stinson, 335 So.2d 912 (Miss.1976), Malvaney owned the surface estate and an undivided 1/7th of the mineral estate in a tract of land. Malvaney conveyed the land to Stinson by warranty deed, which included a purported conveyance of the entire mineral estate. Stinson, however, knew that he was not acquiring all of the mineral estate from Malvaney. Afterwards, Malvaney was employed to purchase mineral interests for Buchanan, and Malvaney purchased for Buchanan an undivided 1/7th mineral interest in the same tract he had conveyed to Stinson. Buchanan and Malvaney then filed suit against Stinson to cancel any claim that Stinson might have to the mineral interest acquired for Buchanan by Malvaney.
 
 
 88
 The chancellor applied the after-acquired title doctrine and § 89-1-33, and held that the interest acquired by Malvaney for Buchanan passed to Stinson. The Supreme Court, however, reversed and rendered judgment for Buchanan and Malvaney. It held that the doctrine of after-acquired title was inapplicable to Malvaney. In doing so, the court gave two reasons for its decision: first, that Stinson was aware that he was not acquiring all of the mineral estate from Malvaney when he received his deed, and second, that Malvaney acquired the 1/7th mineral interest as a strawman or conduit for passing title to Buchanan.
 
 
 89
 The part of the opinion which discusses the effect of Stinson's knowledge of Malvaney's defective title on Stinson's right to invoke the after-acquired title doctrine relies on Crooker v. Hollingsworth, 210 Miss. 636, 46 So.2d 541 (1950); Quates v. Griffin, 239 So.2d 803 (Miss.1970); Collier v. King, 251 Miss. 607, 170 So.2d 632 (1965); Craft v. Everett, 237 Miss. 360, 115 So.2d 133 (1959); Roberts v. Bookout, 162 Miss. 676, 139 So. 175 (1932); and Meyerkort v. Warrington, 19 So.2d 433 (Miss.1944), withdrawn on other grounds, 198 Miss. 29, 20 So.2d 708 (1945). None of these cases, however, except Crooker v. Hollingsworth, concern the doctrine of after-acquired title.
 
 
 90
 In Crooker, as in Stinson, a grantee attempted to invoke the doctrine against one acting as a conduit for another. In its opinion, however, the Supreme Court also discussed the effect of the grantee's knowledge of the defect in the grantor's title:
 
 
 91
 In 31 C.J.S. Estoppel § 21, p. 205, it is said: 'Grantee's knowledge. It has been held that a subsequently acquired title will not pass where the grantee knows of the deficiencies in the grantor's title.'[26]
 
 
 92
 Although Crooker and Buchanan contain language that would prevent a grantee with knowledge of a defect in his grantor's title from invoking the doctrine of after-acquired title, those cases are clearly distinguishable from Fletcher, Garner, and Meyers, and from the instant case, in that they concern the attempted application of the doctrine against a strawman or conduit.[27] There is no evidence that Sue Bettie Mills acquired the 1/16 mineral interest for another, and there is no evidence that appellants or their predecessors in title, except for Wheless, unlike the grantees in Crooker and Buchanan, had actual knowledge of the title defect. Neither Crooker nor Buchanan discuss, question, nor overrule Fletcher, Garner, nor Meyers, which are closer factually to the instant case. Moreover, it is unclear whether the fact that Wheless had actual notice will prevent the remaining appellants, who did not have actual notice, but who may have had constructive notice, from invoking the doctrine.
 
 
 93
 In the absence of a clear controlling decision on this point, we have decided to certify this question to the Supreme Court of Mississippi.
 
 C. Limitations
 
 94
 Appellants' final contention is that the appellees are barred by the ten year statute of limitations, Miss.Code Ann. § 15-1-7 and § 15-1-9, from challenging the movement of the 1/16 interest from Sue Bettie Mills to them.
 
 
 95
 The limitations statutes relied on by appellants, unlike § 15-1-13, may be used defensively only. Neal v. Teat, 240 Miss. 35, 126 So.2d 124, 125 (1961). They do not apply "where (1) the complainant holds title, (2) has the actual or constructive possession of the property, and (3) the defendant, whose claimed adverse interest is sought to be cancelled, is not in possession. In short, statutes of limitation do not begin to run against a person who has (1) good title, and (2) actual or constructive possession of lands, until an adverse entry has been made." Neal, 126 So.2d at 126.
 
 
 96
 We understand appellants' argument to be that even if the doctrine of after-acquired title does not operate in their favor, then they are entitled to the 1/16 mineral interest because they have constructively possessed it for more than ten years. We disagree.
 
 
 97
 Assuming that the doctrine of after-acquired title does not apply against Sue Bettie Mills, upon acquiring title to the 1/16 mineral interest, she took constructive possession of it. Neal, 126 So.2d at 127. Appellants must therefore have made an adverse entry. White v. Merchants and Planters Bank, 229 Miss. 35, 90 So.2d 11, 15 (1956). There is, however, no evidence that appellants ever took actual possession of the minerals. Appellees were not therefore required to take action until their title was "menaced by an adverse claim." Newman v. White Lumber Co., 162 Miss. 581, 139 So. 838, 840 (1932).
 
 IV.
 CONCLUSION
 
 98
 Accordingly, we certify the following questions to the Supreme Court of Mississippi:[28]
 
 
 99
 1. Whether a defectively acknowledged and recorded deed imparts constructive notice if the defect in the acknowledgment is entirely latent?
 
 
 100
 2. If the answer to Question No. 1 is "No", then whether Miss.Code Ann. § 89-5-13 cures a defect that concerns the incompetency or disqualification of the officer who takes an acknowledgment to an instrument; and if so, whether the statute could be applied to cure such a defect in an acknowledgment so as to impart constructive notice to bona fide purchasers who acquired their mineral interests before passage of the statute?
 
 
 101
 3. Whether a married woman, who in 1940 joins her husband in a deed of his separate property which is their homestead and which deed, though reciting that the grantors are husband and wife, does not recite that the property is homestead or the separate property of the husband and does not indicate that her joinder is pro forma or limited to a release of her homestead interest, is estopped to assert an after-acquired title against the grantee in the deed?
 
 
 102
 4. If the answer to Question No. 3 is "Yes", then whether a grantee may invoke the doctrine of after-acquired title against a grantor who has no title at the time of her conveyance even though the grantee has actual knowledge of the defect in the grantor's title?
 
 
 103
 5. If the answer to Question No. 4 is "No," then whether those holding under the original grantee, but such subsequent grantees having no actual knowledge of the defect in the original grantor's title, may invoke after-acquired title as against the original grantor, and if so, whether constructive knowledge on the part of such remote grantees would prevent them from doing so?
 
 CERTIFIED.APPENDIX A
 
 104
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 [1]
 Miss.Sup.Ct.R. 46 provides as follows:
 When it appears to the Supreme Court of the United States or to any circuit courts of appeal of the United States, that there are involved in any proceedings before it questions or propositions of law of this state which are determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the Supreme Court of this state, such federal court before rendering a decision may certify such questions or propositions of law of this state to the Supreme Court of Mississippi for rendition of a judgment or opinion concerning such questions or propositions of Mississippi law. This court may in its discretion, decline to answer the questions certified to it.
 The evolution of certification practice and procedure in this Circuit is outlined in Brown, "Certification-Federalism in Action," 7 Cum.L.R. 455 (1977).
 
 
 [2]
 Glasco was a subscribing witness to the execution of the Wheless deed. The acknowledgment to that deed was given by Glasco before a notary public pursuant to § 2137, Code of 1930 (§ 89-3-7 of the 1972 Code), which provides that proof of execution of an instrument may be made by a subscribing witness. The statute also provides a form to be used for this type of acknowledgment. The acknowledgment to the Wheless Deed is almost identical to that set forth in the statute. Appellees suggest, however, that the acknowledgment is void because Glasco was the procuring cause of the conveyance. This argument appears not to have been raised in the district court, but in any event, we consider it to be without merit as it was rejected by this Court in White v. Union Producing Company, 140 F.2d 176 (5th Cir. 1944). In White, the Court, in considering a subscribing witness acknowledgment under § 2137, held that an acknowledgment of a subscribing witness who is the procuring cause of a conveyance as agent for the grantee therein is not void. Here, there is no evidence that Glasco personally had a direct pecuniary interest in the transaction, nor is there any evidence of his financial arrangements with his principal, Wheless
 
 
 [3]
 Henry G. Mills; Charles R. Mills; Mrs. Frank Milsap; Floyd Mills; James Cochran; Lois M. Stevens, James R. Mills; Roy H. Mills; Erma H. Mills; Margaret Mills, Rhonda Mills, Randy Mills, Minors by and through their Mother, Mrs. Erma H. Mills; Ben C. Daws, individually and Ben C. Daws, Trustee; Donald Clark and Ann Marie Clark; Damson Oil Corporation, C. F. Braun & Company; The Ballard & Cordell Corporation; James A. Patterson; G. G. Tunstill; Jack C. Tunstill; Evratex 1975-B Partnership; E. P. Manson, Jr.; Warren Donaldson; H. D. Lee; Irving Clayton; N. E. Archie; N. E. Archie, Jr.; Troy Anderson; George P. Hill and Kenneth Waltip, Trustees for Hill Revocable Trust of April 1, 1974; James Robert Hill; Virginia Glenn Hill Lattimore; James Robert Hill, Virginia Glenn Hill Lattimore, and B. P. Lockhart as Trustees of the Houston and Emma Hill Trust; Heirs of Edna Hill Meeker; E. L. Zihlman; Southeastern Oil Company; A. E. Beasley; David C. Harrell; J. R. Hood; Jemco, a Partnership of which Emil T. Monsour and Lucious Carter Monsour are Partners; Colon C. Mills, Jr.; Lucious Carter Monsour; Emil T. Monsour; F. Deon Kebert
 
 
 [4]
 J. S. Wheless, Jr.; W. H. Cocke, Mrs. Harriett Dorchester Mortimer; Mrs. Frances Dorchester Harrell; J. T. Trotter, Executor of the Estate of Ada Nance Wheless; J. T. Trotter, Trustee of the Joseph Sydney Wheless, Jr. 1974 Trust
 
 
 [5]
 The district court's opinion intimates that the remaining appellants had sufficient knowledge of circumstances (which are not specified by the court) to put them upon inquiry into the true state of the title, which if pursued by them, would have led to actual knowledge of the Daws Deed
 
 
 [6]
 The term "bona fide purchaser" shall be used throughout this opinion to mean a purchaser for a valuable consideration without actual or constructive notice of other existing claims
 
 
 [7]
 Wheless
 The deed from Claude and Sue Bettie Mills to Wheless recites a consideration of "$10.00 and other good and valuable consideration." The mineral deed from Wheless to Gus F. Schreiner recites a consideration of "$10.00 and other good and valuable consideration." The mineral deed from Wheless to C. M. Dorchester recites a consideration of "$10.00 and other good and valuable consideration."
 Dorchester
 The mineral deed from C. M. Dorchester to Francis Dorchester Harrell and Betty Dorchester Mortimer conveys all Dorchester's mineral interest "for valuable consideration."
 Schreiner
 The deed from Charles Schreiner Bank, Trustee of Trust No. One Under Will of Gus F. Schreiner, deceased to W. H. Cocke recites a consideration of "$10.00 and other good and valuable consideration."
 
 
 [8]
 The mineral deed from Wheless to J. T. Trotter, Trustee of the Joseph Sydney Wheless, Jr. 1974 Trust under Agreement Dated 5-18-74 conveys 1/2 of 9/128 mineral interest "in consideration of the terms of the J. S. Wheless, Jr. 1974 Trust."
 
 
 [9]
 The mineral deed from Wheless to J. T. Trotter, Independent Executor of the Estate of Ada Nance Wheless, deceased, conveys to Trotter 1/2 of 9/128 mineral interest "in consideration of the community property interest or claim of my deceased wife Ada."
 
 
 [10]
 S. B. Daws, in his capacity as Deputy Chancery Clerk, was authorized by § 2136 of the 1930 Mississippi Code to take acknowledgments. See also McRaven v. McGuire, 17 Miss. 34 (1847) (A deputy clerk of probate may take the acknowledgment of a deed.)
 
 
 [11]
 But cf.: Remington Paper Co. v. O'Dougherty, 81 N.Y. 474 (1880) (Officer not disqualified by reason of his relationship to the parties from taking the acknowledgment of a deed from his father to his wife.); Kimball v. Johnson, 14 Wis. 734 (1861) (Where a mortgage is made to a married woman, the acknowledgment thereto is not invalid because it is taken before her husband.); McAllister v. Purcell, 124 N.C. 262, 32 S.E. 715 (1899) ("There is no principle of law, nor precedent, which invalidates an acknowledgment and privy examination taken before an officer who has neither any interest in the instrument nor is a party thereto, simply because he is related to the parties."); Nixon v. Post, 13 Wash. 181, 43 P. 23 (1895) (Where land is deeded to a wife as her separate property, the acknowledgment of the grantor may be taken before the grantee's husband if he is authorized to take acknowledgments, even though he purchased the property for his wife.); Morrow v. Cole, 58 N.J.Eq. 203, 42 A. 673 (1899) (Taking of acknowledgment of a married woman is a judicial or quasi-judicial act.)
 
 
 [12]
 Although a portion of the funds used to pay for the minerals may have been Mr. Daws's separate property, because the Daws Deed was made to his wife, no resulting trust in favor of Mr. Daws would arise under Mississippi law, the presumption being that Mr. Daws intended to make a gift to his wife. Bird v. Stein, 258 F.2d 168 (5th Cir. 1958), cert. denied, 359 U.S. 926, 79 S.Ct. 608, 3 L.Ed.2d 628 (1959); see also Wilson v. Beauchamp, 50 Miss. 24 (1874); Stevens v. Hill, 236 So.2d 430 (Miss.1970). Moreover, Mr. Daws's testimony at trial demonstrated his intent to make a gift to his wife
 
 
 [13]
 In Dodwell v. Reeves, 114 Miss. 4, 74 So. 770 (1917), the Supreme Court of Mississippi held that a clerk, who took the acknowledgment of a bank's general assignment through its directors for the benefit of creditors, was not incompetent to take the acknowledgment because he was a debtor of the bank. The financial interest of the clerk, however, was remote, whereas the financial interest of Daws is direct and immediate. There was no mention in the opinion that the clerk was a procuring cause of the assignment
 
 
 [14]
 That the acknowledgment to the Daws Deed is defective does not render the deed itself void. Claude Mills owned the minerals as his separate property, but the minerals were part of his and his wife's homestead. Under § 1778 of the 1930 Code, a conveyance of separate property of the husband, which is part of the homestead "shall not be valid or binding unless signed by the wife of the owner." Section 1780, however, provides that when the wife owns the homestead property, a conveyance of it "shall not be valid or binding unless signed and acknowledged by the owner and the husband." (emphasis added) Because the minerals were the separate property of Claude Mills, the conveyance by Mills and his wife to Daws need not have been acknowledged for it to be valid and binding, and the appellants do not contend otherwise
 
 
 [15]
 In Simmons v. Dantzler, 152 Miss. 428, 118 So. 829 (1928), the acknowledgment concerned was not defective. In Walters v. M & M Bank of Ellisville, 218 Miss. 777, 67 So.2d 714 (1953), the defect in the acknowledgment was entirely latent, but because no bona fide purchasers were in the case the court did not discuss whether such defect imparted constructive notice
 
 
 [16]
 The following authorities hold that where the defect does not appear on the face of the acknowledgment, the record imparts constructive notice: Ogden v. Mensch Bldg. and Loan Ass'n, 196 Ill. 554, 63 N.E. 1049 (1902); Kee v. Ewing, 17 Okl. 410, 87 P. 297 (1906); Ardmore Nat. Bank v. Briggs Mach. & Supply Co., 20 Okl. 427, 94 P. 533 (1907); National Bank of Fredericksburg v. Conway, 17 Fed.Cas. 1203 (E.D.Va.1876); Stevens v. Hampton, 46 Mo. 404 (1870); Boswell v. First Nat. Bank of Larime, 16 Wyo. 161, 92 P. 624 (1907); Southwestern Mfg. Co. v. Hughes, 24 Tex.Civ.App. 637, 60 S.W. 684, 687 (1900), writ refused; Morrow v. Cole, 58 N.J.Eq. 203, 42 A. 673 (1898); Corey v. Moore, 86 Va. 721, 11 S.E. 114 (1890). 1 Delvin § 477j, pp. 868-869 states:
 If there is nothing on the face of the instrument to show the invalidity of the acknowledgment public policy demands that the public, relying upon the faith of the record, should be protected against hidden defects. If reliance could not be placed upon the record, as it appears to be, and if a defect of this character could be urged to defeat the title of an innocent purchaser, or incumbrancer, the record would be useless. The rule, therefore ought to be that the registration of such a deed, fair upon its face, operates as constructive notice to the protection of bona fide purchasers.
 
 
 [17]
 For a construction of a similar statute see Webb v. Den, 58 U.S. 576, 15 L.Ed. 35 (1854)
 
 
 [18]
 The opinion in Cameron states that both Taylor and Hardeman v. Cowan, 18 Miss. 486 (1848), held that where a husband alone had made a conveyance with covenants of warranty, an after-acquired title by his wife inured to his grantee. Hardeman, however, did not concern a conveyance by a husband, but instead a conveyance to a husband, whose wife attempted to set up an adverse title against the vendor. The court, in refusing to allow the vendee's wife to set up an adverse title, stated:
 It is a well established general rule, that where a purchaser has been put in possession, he cannot afterwords acquire a title and set it up in opposition to the vendor. If he extinguishes an incumbrancer, or buys in an outstanding title, all he can ask or require is the repayment of the money he has so laid out....
 This reason is equally operative, whether the purchase of the incumbrance be, by the vendee or his wife. 18 Miss. at 501.
 The language which the court in Cameron and in Robinson v. Lewis, 68 Miss. 70, 8 So. 258 (1890) sought to disapprove indirectly was the following:
 There is such an identity between them, that what under such circumstances cannot be done by the husband, cannot be done by the wife. 18 Miss. at 501.
 Where there is an attempt to evade creditors or fraud, the acquisition of title by the grantor's wife will inure to the grantee. In Vincent v. McClintock, 200 Miss. 445, 27 So.2d 681 (1946), Vincent mortgaged his separate property. His wife did not join in the deed of trust. The deed of trust was foreclosed and the land was sold to McClintock. Afterwards, the land was sold to the state for taxes. Vincent's wife purchased the land from the state, and sought to set up her title against McClintock. McClintock sued to cancel the wife's claim of title. The Supreme Court held:
 Had the mortgagee become the purchaser at the trustee's sale the mortgagor could not have set up any after-acquired title against him, and certainly this must be true if the after-acquired title had any substantial connection in the course of events by which the purchaser at the foreclosure sale obtained his right and title; and the same disqualification would extend to the mortgagor's wife. 27 So.2d at 682.
 See Stuart v. Pickett, 193 Miss. 455, 10 So.2d 207 (1942). The cases discussed above are, of course, distinguishable from the instant case, which involves no fraud or evasion of creditors.
 
 
 [19]
 In Fitzgerald, the syllabus and the appellant's brief state that Mrs. Cammack acknowledged the deed as the wife only; however, the language of the opinion respecting the deed itself gives an opposite inference: that she joined in the deed as a grantor, and not as a wife only
 
 
 [20]
 Before trial, the parties stipulated that "the surface of the subject land was the residence of Claude and Sue Bettie Mills during the year of 1940."
 
 
 [21]
 A wife's homestead interest is not a property right, but a veto power against the conveyance of the homestead by her husband. Kimbrough v. Powell, 143 Miss. 498, 108 So. 498 (1926)
 
 
 [22]
 The Wheless deed recites "Claude and Sue Bettie Mills, husband and wife ... hereinafter called grantor (whether one or more and referred to in the singular number and masculine gender)...."
 
 
 [23]
 In Ethridge, 17 Miss.L.J. at 159, it is said that:
 It is not necessary (for the invocation of the doctrine of after-acquired title) that the conveyance should have been made for a valuable consideration; a nominal consideration is enough.
 
 
 [24]
 The Wheless Deed contains the following warranty:
 (T)o have and to hold the said undivided interest in all of the said oil, gas and other minerals, in, on and under said land together with all and singular the rights and appurtenances thereto in any wise belonging, with the right of ingress and egress, and possession at all times for the purpose of mining, drilling and operating for said minerals and the maintenance of facilities and means necessary or convenient for producing, treating and transporting such minerals and for housing and boarding employees unto said grantee, executors and administrators hereby agrees to warrant and forever defend all and singular the said interest in said minerals, unto the said grantee, his heirs, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof. (emphasis added)
 
 
 [25]
 In Ethridge, 17 Miss.L.J. at 154, it is said that in Harris v. Byers, 112 Miss. 651, 73 So. 614 (1917), a grantee who had constructive notice of a "properly recorded deed of trust" was able to invoke the doctrine of after-acquired title against his grantor who subsequently acquired the outstanding title. Neither the court's opinion, the syllabus, nor the briefs of counsel, however, mention whether the deed of trust was recorded
 
 
 [26]
 The court in Crooker, however, did not quote the entire section:
 Grantee's knowledge. It has been held that a subsequently acquired title will not pass where the grantee knew of the deficiencies in the grantor's title, as where the deficiencies appeared in the deed. On the other hand, it has been held that where the grantor's knowledge was as great as or greater than, the grantee's, he cannot rely on the grantee's knowledge to avoid being estopped by his deed. (emphasis added) (footnotes omitted)
 Certainly, Claude and Sue Bettie Mills's knowledge was as great as Wheless's.
 The court in Crooker and Buchanan characterized after-acquired title as an equitable doctrine. In 5 Thompson on Real Property § 2522 (1979), however, it is stated:
 Although there are cases to the contrary, the after-acquired title doctrine really is legal, not equitable, and is a phase of the warranty covenant of a deed as cutting off all of the rights of the grantor and his heirs. (footnotes omitted)
 See also in this latter connection Carter v. Bustamente, 59 Miss. 559, 560 (1882) and Ethridge, supra.
 
 
 [27]
 See 31 C.J.S. Estoppel § 33 p. 324 (1964) and Ethridge, 17 Miss.L.J. at 158
 
 
 [28]
 We repeat what we have often said in the past:
 (T)he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.
 Martinez v. Rodriquez, 394 F.2d 156, 159 n. 6 (5th Cir. 1968).
 While the certified questions do not embrace all the issues of Mississippi law asserted by the parties in their briefs (which are discussed in our opinion), we do not consider the other issues to raise unsettled questions of Mississippi law. Should the Supreme Court disagree with our analysis of these other issues of Mississippi law, we invite that Court to call our attention to any controlling principles of state law derived therefrom.